STATE of Minnesota, Respondent

v.

Jonathan SANDERS, Appellant.

No. A06–1354.

Court of Appeals of Minnesota.

Jan. 15, 2008.

Lori Swanson, Attorney General, St. Paul and Susan Gaertner, Ramsey County Attorney, Jeanne L. Schleh, Assistant County Attorney, St. Paul, for respondent.

John M. Stuart, State Public Defender, Benjamin J. Butler, Assistant State Public Defender, St. Paul, for appellant.

Considered and decided by
KLAPHAKE, Presiding Judge;
SHUMAKER, Judge; and WORKE,
Judge.

## O P I N I O N

KLAPHAKE, Judge.

Appellant challenges his conviction for first-degree criminal sexual conduct, Minn. Stat. § 609.342, subd. 1(a) (2004), arguing that the district court erred by admitting the statements he made to FBI officers in Chicago, Illinois, who did not record the statements as required for admission at trial under Minnesota law by *State v. Scales,* 518 N.W.2d 587 (Minn.1994). Appellant also asserts that the court erred by admitting evidence of prior sexual misconduct against the victim and her sister under Minn.Stat. § 634.20 (2004), absent the procedural safeguards required by Minn. R. Evid. 404(b) for so-called *Spreigl* evidence.

Because the *Scales* requirement is a procedural measure designed to govern the conduct of Minnesota law enforcement personnel and does not rise to the level of a constitutional guarantee, and because the evidence of prior sexual misconduct against the victim and her sister rests squarely within the limits of Minn.Stat. § 634.20, we affirm.

## FACTS

On October 29–30, 2004, appellant engaged in first-degree criminal sexual conduct with B.J., the eleven-year-old daughter of his girlfriend, S.J. B.J. told her mother about the assault that day; S.J. immediately called appellant and accused him of having sexual contact with B.J. After the confrontation, appellant left the Twin Cities for the Chicago area, where his mother lives.

A criminal complaint and fugitive warrant were issued, and on May 24, 2005, the FBI arrested appellant at his mother's home near Chicago. Appellant was taken to a local Chicago Police Department, where the FBI contacted the St. Paul Police Department. After this contact, the FBI interrogated appellant in accordance with Illinois law, which does not require the recording of custodial interrogations. According to FBI agents, appellant was advised of his constitutional rights and chose to waive them. The FBI produced an "Advice of Rights" form, with "signature refused" on it. During the interrogation, appellant denied having sexual contact with B.J. Appellant also made the following revealing statements: (1) he did

not "f* * *" B.J.; (2) he masturbated throughout the house on a regular basis, including in B.J.'s room, but not while she was present; (3) he would not have sex with B.J., because he believed that she had a venereal disease, based on a vaginal odor that he compared with a neighbor's; and (4) he had never observed B.J.'s genitalia.

St. Paul police and a specially trained nurse interviewed B.J. immediately following the assault. B.J. credibly described the incident in which appellant came into her bedroom, removed her pants and underwear, masturbated against her, ejaculated, and washed himself with a washcloth. When she arrived at the hospital on the date of the assault, B.J. was not wearing underwear, consistent with her story about appellant replacing only her pants. B.J. was also tested for venereal disease and was found not to have a disease or an odor. The washcloth identified by B.J. was tested for DNA; it revealed the presence of semen, and appellant could not be excluded as a source of that DNA.

During trial, the state offered evidence of appellant's similar conduct under Minn. Stat. § 634.20 (2006). B.J. testified that on two separate occasions, appellant had licked her breast and hit her on the head with his penis. B.J.'s older sister, N.J., lives with N.J.'s father in Chicago. N.J. testified that during spring break of 2003, when she was about 17 years old and was visiting her mother, appellant approached her and touched her vagina when she was sleeping on the couch. She got up and went into B.J.'s room to get away from him. She reported the misconduct to her father, who told her grandmother, who informed S.J. of the incident. Appellant denied this sexual contact, but S.J. barred him from the house until N.J. returned to her father's house.

Appellant testified at trial. He stated that neither the charged sexual offense nor the prior incidents of sexual misconduct had occurred. Appellant also denied making any statements to the FBI, asserting that he had simply denied having any sexual contact with B.J. and suggesting that the FBI officers had fabricated other purported statements.

Appellant was convicted of first-degree criminal sexual conduct and brought this appeal. The state moved to strike portions of appellant's pro se supplemental brief.

## ISSUES

1. Did the district court err by admitting appellant's statements made to FBI officers in Illinois, despite the FBI's failure to record those statements?

2. Did the district court abuse its discretion by admitting evidence of appellant's prior sexual misconduct against the victim and her sister?

3. Has appellant raised meritorious issues in his pro se brief?

4. Should portions of appellant's pro se appellate brief be stricken?

## ANALYSIS

*1. Scales Requirement*

In *State v. Scales*, 518 N.W.2d 587, 593 (Minn.1994), the Minnesota Supreme Court held that all phases of custodial interrogation, including a reading of constitutional rights, must be recorded where feasible, and that all custodial interrogation that occurs at a place of detention must be recorded. If there is a substantial violation of the recording rule, a district court must suppress the statements at trial. *Id.* The court declined to determine whether the Due Process Clause of the Minnesota Constitution guarantees this right to a criminal suspect, but instead relied on its inherent supervisory power

"to insure the fair administration of justice." *Id.*

Neither the FBI nor the state of Illinois has a recording requirement, however. *See State v. Conger*, 652 N.W.2d 704, 707 n. 2 (Minn.2002) (noting that recording of interrogations is not required under the Illinois due process clause). Appellant argues that while the Minnesota courts do not have jurisdiction over Illinois or FBI procedure, the *Scales* requirement is a procedural requirement in Minnesota and courts of this state have the power to admit or exclude evidence obtained elsewhere if state standards are not met.

In formulating the *Scales* requirement, the supreme court intended to limit factual disputes about defendant statements, to promote accuracy, to discourage misleading and false testimony, to curb abusive police practices, and to preserve a defendant's right to a fair trial. *Scales*, 518 N.W.2d at 591. The court considered the recommendations of the Model Code of Pre–Arraignment Procedure, § 150.3, (2), (3) (1975), which sets forth considerations to be made in determining when violations of pre-arraignment procedure are substantial. *Scales*, 518 N.W.2d at 592 n. 5. These considerations include whether the act was a willful deviation from lawful conduct and whether exclusion of evidence would deter future violations. *Id.* The court's reasoning makes it clear that the *Scales* recording requirement is a state procedural rule intended to govern conduct occurring within the state.

Because the *Scales* requirement is not a part of either Illinois law or federal law, we conclude that the FBI did not willfully deviate from lawful conduct during the interrogation and that suppression of this evidence would not prevent future violations in Minnesota. The district court therefore did not err by admitting appellant's statement.

■ Appellant also argues that the prejudicial effect of the statements made to the FBI outweigh their probative value. *See* Minn. R. Evid. 403 (excluding even relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury"). Although appellant's statements undoubtedly cast him in a poor light, they are undoubtedly highly probative of appellant's attitude toward the victim. The district court did not abuse its discretion by admitting these statements. *See State v. Bell*, 719 N.W.2d 635, 641 (Minn.2006).

### 2. Similar Conduct Evidence

■ Minn.Stat. § 634.20 (2006) allows introduction of "[e]vidence of similar conduct by the accused against the victim of domestic abuse, or against other family or household members," unless the prejudicial effect of the evidence outweighs its probative value. *See* Minn. R. Evid. 403 (setting forth similar balancing test to determine general admissibility of evidence). "Domestic abuse" is defined in Minn.Stat. § 518B.01, subd. 2 (2006), to include criminal sexual conduct inflicted on a family or household member.

■ Prior domestic abuse evidence admissible under Minn.Stat. § 634.20 is like *Spreigl* evidence, but differs in critical ways. *State v. Meldrum*, 724 N.W.2d 15, 20 (Minn.App.2006), *review denied* (Minn. Jan. 24, 2007); *see* Minn.Stat. § 634.20 (defining "domestic abuse" for purposes of the statute as it is defined in Minn.Stat. § 518b.01, subd. 2). Caselaw following *Spreigl* makes clear that *Spreigl* evidence is admissible only after a five-step process; for limited purposes of showing motive, intent, lack of mistake or accident, or common scheme or plan; and only upon clear and convincing evidence of the defendant's

participation in the prior similar conduct. *State v. Ness,* 707 N.W.2d 676, 685–86 (Minn.2006). Minn.Stat. § 634.20 does not include the same procedural prerequisites. *State v. McCoy,* 682 N.W.2d 153, 159–60 (Minn.2004).

Commenting on the different treatment of *Spreigl* and prior domestic abuse evidence, the supreme court stated:

> As we have already discussed, our precedent indicates that we have treated evidence that illuminates the history of the relationship between an accused and a victim differently than other, "collateral" *Spreigl* evidence. We believe this different treatment is appropriate in the context of the accused and the alleged victim of domestic abuse. Domestic abuse is unique in that it typically occurs in the privacy of the home, it frequently involves a pattern of activity that may escalate over time, and it is often underreported. Domestic abusers often exert control over their victims, which undermines the ability of the criminal justice system to prosecute cases effectively.

*Id.* at 161 (citations omitted).

We observe no abuse of discretion in the district court's admitting evidence of appellant's prior sexual misconduct against B.J. and N.J. The court weighed the probative value of the evidence against its prejudicial effect. *Bell,* 719 N.W.2d at 639. Although the court gave no limiting instruction during B.J.'s or N.J.'s testimony, it did give a limiting instruction during the investigating officer's testimony, and the following limiting instruction in its charge to the jury:

> The State has introduced evidence of acts of alleged sexual misconduct by the defendant on dates other than October 29th through 30, 2004. This evidence was admitted for the limited purpose of assisting you in determining whether the defendant committed the act with which he is charged in the complaint. The defendant is not being tried for, and may not be convicted of any offense other than the charged offense. You may not convict the defendant solely on the basis of any prior occurrence. To do so might result in unjust double punishment.

In *Bell,* 719 N.W.2d at 638, the district court gave a similar limiting instruction during the charge to the jury, and no other limiting instruction during the trial.

Because the prior domestic abuse evidence here meets both the requirements and purposes of Minn.Stat. § 634.20; the district court did not abuse its discretion by admitting this evidence.

### 3. Appellant's Pro Se Issues

Appellant has raised a number of issues in his pro se supplemental brief and the addendum to this brief. We have carefully reviewed the record and conclude that these issues lack merit. Insofar as appellant is asserting ineffective assistance of counsel, we note that there is a strong presumption that an attorney acted competently. *Dukes v. State,* 621 N.W.2d 246, 252 (Minn.2001). To successfully assert ineffective assistance of counsel, appellant must have demonstrated that his attorney failed to exercise the customary skills and diligence of a reasonably competent attorney acting in those circumstances, and he was so prejudiced by counsel's error that a different result would be expected but for the error. *See id.* Courts defer to decisions of counsel regarding trial strategy. *State v. Lahue,* 585 N.W.2d 785, 789 (Minn.1998). Appellant has asserted that his attorney erred in issues of strategy, and we decline to find ineffective assistance of counsel on the record before us.

### 4. Motion

The state has moved to strike portions of appellant's pro se supplemental brief as relying on evidence outside the record. Minn. R. Civ.App. P. 110.01 (record on appeals consists of papers filed in the trial court, the exhibits, and a transcript of the proceeding). We have reviewed the record and grant the state's motion to strike those portions of appellant's pro se supplemental brief as set forth in the state's motion papers.

## DECISION

The district court did not err by refusing to suppress appellant's unrecorded statements made to FBI agents in Illinois, and by permitting evidence of appellant's prior sexual contact with B.J. and N.J. pursuant to Minn.Stat. § 634.20 (2006). Appellant's references in his pro se brief to matters outside the record, as set forth in the state's motion papers, are stricken.

**Affirmed; motion granted.**