STATE of Minnesota, Respondent,

v.

Sylvester McCURRY, Sr., Appellant.

No. A08–0931.

Court of Appeals of Minnesota.

Aug. 18, 2009.

Lori Swanson, Attorney General, Kelly O'Neill Moller, Assistant Attorney General, St. Paul, MN, Douglas H. Johnson, Washington County Attorney, Washington County Courthouse, Stillwater, MN, for respondent.

Marie L. Wolf, Interim Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by
SHUMAKER, Presiding Judge;
TOUSSAINT, Chief Judge; and
HALBROOKS, Judge.

## OPINION

TOUSSAINT, Chief Judge.

Sylvester McCurry, Sr. was convicted of burglarizing his ex-wife's home and stealing her wallet. In this appeal from conviction, he challenges the state's introduction of relationship evidence under the domestic-abuse statute. He also argues for reversible error based on a witness's unsolicited comment about a prior incarceration and based on the prosecutor's insinuations about the absence of alibi witnesses for appellant. Because we conclude that the

errors individually were harmless, we affirm.

## FACTS

While appellant's ex-wife, G.M., was getting ready for work on August 25, 2007, a man forcefully entered her Woodbury home, damaging her patio door. The intruder, after encountering G.M. and a house guest, took G.M.'s wallet from her purse and left. G.M. and her house guest identified the intruder as appellant. Appellant called G.M. later that day and arranged to meet with her at Sun Ray Shopping Center, telling her that he wanted to show her where he ditched her wallet. Appellant denies that he was at G.M.'s house that morning and says that he arranged to meet with G.M. because she was concerned about an injury he had suffered and offered to give him a ride to pick up medications. G.M. arranged for police officers to follow her to the shopping center. Seeing them, appellant fled but was apprehended with the help of two police dogs. Appellant was charged with first-degree burglary.

At trial, the parties immediately made the troubled relationship between G.M. and appellant an issue. Defense counsel mentioned it in his opening statement. G.M. was the state's first witness and testified regarding her and appellant's history. She explained that they met in 1993 and she then became pregnant with appellant's child. The prosecutor asked, "And then what happened?" and G.M. replied, "Well, then he went to prison in Stillwater for a sexual—attempted sexual assault charge." Appellant moved for a mistrial, arguing that it was prejudicial for the jury to know that he is a convicted sex offender. The prosecutor argued that the statement was unsolicited and unexpected. The court agreed and denied the mistrial, stating that the jurors would be able to follow a curative instruction because they were "fairly sophisticated."

The district court explained to the jury that G.M. "mentioned that [appellant] had apparently served time in prison for an offense not in any way related to this case." It instructed the jury "to disregard and not consider in any way any offense for which [appellant] may have previously been incarcerated." At the start of the trial, the court also told the jury: "If I instruct you during the trial to disregard some statement that a witness has made, you must disregard it."

Defense counsel also asked the court to forbid G.M. from testifying about "any other criminal activity or bad acts." The state argued that evidence of G.M. and appellant's relationship was admissible under Minn.Stat. § 634.20 (2006), despite conceding that the conduct underlying appellant's charges did not qualify as domestic abuse. The district court decided to have G.M. give her testimony outside the presence of the jury, so that the court could "figure out whether [the prior acts were] similar enough under 634.20 to be relevant enough to come in."

G.M. testified that, before and throughout her five-year marriage to appellant, she endured intermittent incidents of physical abuse and sexual infidelity, although there were also periods of stability and cordialness. G.M. told the court that a physical attack in 2005, for which appellant was convicted of misdemeanor domestic abuse, led her to seek to dissolve the marriage. She also proffered testimony about her and appellant's relationship after the marriage was dissolved, which included incidents of verbal and emotional abuse. G.M. testified that, at times, she told appellant to stop calling her or stop coming to her house. G.M. retained custody of their child, and she said appellant often tried to scare G.M. by claiming that the

child protection office was investigating her.

G.M. also described three incidents that occurred in August 2007 in the weeks before the burglary. In the first incident, appellant came to G.M.'s house, argued with her, pushed her, and smashed her phone when she tried to call for help. She fled the house, but appellant remained, refused to leave, damaged property, and hid out in the house until G.M. returned. In the second incident, appellant entered G.M.'s house through the kitchen window one night and stayed with her overnight. In the third incident, he called G.M. and made a veiled threat, and G.M. discovered damage to her car the next morning.

The district court concluded that, under section 634.20, prior-act evidence was not limited to cases where the current charge qualified as domestic abuse, but instead turned on whether the prior conduct was similar to the current charge and not unfairly prejudicial. The court limited G.M.'s testimony to events that occurred after the marriage dissolution, closer in time to the charged incident, and stated that G.M. could testify, generally, that she and appellant had problems and at times she had to call the police. The court allowed G.M. to testify to the three incidents she described and gave the jury an instruction explaining the purpose of the evidence. G.M. testified substantially as she had in the proffer, within the limits set by the court.

The state called other witnesses. G.M.'s houseguest the morning of the burglary testified that appellant was the burglar. A bus driver testified that she saw appellant on her bus that morning and that she dropped him off in Woodbury. A police officer testified about photographs he took of G.M.'s broken patio door. Canine officers also testified that appellant ran when he saw police with G.M. at the shopping center. Another officer testified about a statement appellant gave after being arrested, in which he avoided discussing his whereabouts that morning.

Appellant testified that the main source of stress between him and G.M. after the marriage dissolution was money that she allegedly owed him from the value of their marital home. He did not address the three incidents that took place in the weeks before the August 25 burglary. As for the burglary itself, he said he was home that morning in bed and later took the bus to the shopping center to meet a friend and buy throw pillows. He also called G.M. that morning to talk about their daughter. He said G.M. wanted to meet him at the shopping center because she was concerned about an injury he was recovering from. The injury involved bites from police dogs in a previous incident; he claimed these injuries explained why he ran when seeing canine officers with G.M. at the shopping center.

During cross-examination, the prosecutor elicited appellant's claim that an overnight guest and a downstairs neighbor saw him at home that morning. The prosecutor impliedly asked appellant why he did not call either of them as a witness. On re-direct, appellant said that he had lost contact with both of them. The state renewed its reference to the absent witnesses in a statement during closing argument, without objection from appellant. Following additional witness testimony, the jury found appellant guilty.

## ISSUES

1. Did the district court abuse its discretion by denying appellant's motion for a mistrial following G.M.'s testimony that appellant served a sentence for a sex crime?

2. Did the district court commit reversible error by allowing evidence of appellant's prior bad acts?

3. Did the prosecutor's statements about appellant's failure to call certain witnesses constitute reversible error?

4. Is the record sufficient to determine whether appellant's trial counsel was constitutionally ineffective?

## ANALYSIS

### I.

■ Appellant argues that he should have been granted a mistrial after G.M. told the jury that he had spent time in prison for a sex offense. The district court's denial of a motion seeking a mistrial is reviewed for abuse of discretion. *State v. Jorgensen,* 660 N.W.2d 127, 133 (Minn.2003).

"A mistrial should not be granted unless there is a reasonable probability that the outcome of the trial would be different if the event that prompted the motion had not occurred." *State v. Manthey,* 711 N.W.2d 498, 506 (Minn.2006) (quotation omitted). References to a defendant's prior criminal history can be unfairly prejudicial. *See State v. Strommen,* 648 N.W.2d 681, 687–88 (Minn.2002) (discussing testimony by officer who testified that he had prior contact with defendant and by accomplice who testified that defendant bragged about prior crimes). The prosecutor has an obligation to caution its witnesses against making prejudicial statements. *State v. Underwood,* 281 N.W.2d 337, 342 (Minn.1979). But a district court's appropriate curative instructions may be sufficient to overcome the harm caused by inadvertent references to prior convictions. *See State v. Miller,* 573 N.W.2d 661, 675–76 (Minn.1998) (affirming district court's denial of mistrial motion where it immediately gave curative instruction following witness's testimony that appellant "had past felonies" and took extra steps to ensure witnesses would not discuss past convictions).

The district court did not abuse its discretion by denying appellant's motion. The comment at issue here was isolated, a single reference to a prior crime. G.M. said appellant "went to prison" for an "attempted sexual assault charge." The parties do not dispute that the prosecutor did not intentionally elicit the comment, and the court counseled the prosecutor to remind all of its witnesses not to mention appellant's record. The district court also gave a thorough instruction, without mentioning the nature of the charge, and without stating definitively whether or not appellant had in fact been to prison. It instructed them to disregard G.M.'s statement and "not consider [it] in any way." The district court had previously given a general instruction preparing the jurors for the idea that they might hear things they would have to ignore and also relied on its own sense that the members of the jury were sufficiently "sophisticated" to disregard G.M.'s statement.

Our conclusion is not altered by *State v. Huffstutler,* 269 Minn. 153, 130 N.W.2d 347 (1964). In *Huffstutler,* which also involved an inappropriate comment about irrelevant sexual behavior by the defendant, the supreme court stated that it may be unrealistic to expect a curative instruction to negate the impression such a comment might have made on jurors. *Id.* at 156, 130 N.W.2d at 349. Appellant argues that it is a "naïve assumption" or "unmitigated fiction" that prejudicial statements can be overcome with an instruction. *See State v. Caldwell,* 322 N.W.2d 574, 591 (Minn.1982) ("The naïve assumption that prejudicial effects can be overcome by instructions to the jury, ... all practicing lawyers know to be unmitigated fiction." (quotation omitted)). But doubts about instructions have not held sway in Minnesota courts, which

in the years since *Huffstutler* have adopted a presumption that jurors follow instructions. *See State v. Hall,* 764 N.W.2d 837 (Minn.2009); *see also State v. Forcier,* 420 N.W.2d 884, 885 n. 1 (Minn. 1988) (stating presumption apparently for first time in Minnesota, and relying on contemporaneous U.S. Supreme Court discussion of question). Even in the *Caldwell* case cited by appellant, the court stated that giving an instruction generally "is a significant factor favoring the denial of a motion for a mistrial." *Id.* at 590 (citing *State v. Carlson,* 264 N.W.2d 639, 642 (Minn.1978)). The court here amply and fairly instructed the jury and it was not an abuse of discretion to deny a mistrial.

## II.

The district court allowed G.M. to describe, in general terms, their relationship after their marriage was dissolved and admitted evidence of three incidents from the weeks before the burglary. The district court allowed the evidence under Minn. Stat. § 634.20 (2006). The parties on appeal also argue admissibility as "general" (non-domestic-abuse) relationship evidence and as *Spreigl* evidence.

▮ Evidentiary rulings are reviewed for abuse of discretion. *State v. Word,* 755 N.W.2d 776, 781 (Minn.App.2008). Appellant must show prejudice by the ruling. *Id.* Construction of a statute or rule of evidence is a question of law subject to de novo review. *State v. Northway,* 588 N.W.2d 180, 181 (Minn.App.1999).

Minn.Stat. § 634.20 states: "Evidence of similar conduct by the accused against the victim of domestic abuse, or against other family or household members, is admissible" unless it should be excluded for other, enumerated reasons. Reasons requiring exclusion include a finding that the evidence is more prejudicial than probative. *Id.* "Similar conduct" under the statute

"includes, but is not limited to" domestic abuse, violation of an order for protection, violation of a harassment restraining order, violation of the harassment/stalking statute, or violation of the harassing/obscene-phone-call statute. *Id.* Domestic abuse, as included in the "similar conduct" definition, is defined by statute to include acts against a family or household member encompassing: physical harm, bodily injury, or assault; the infliction of fear of imminent physical harm, bodily injury, or assault; terroristic threats; criminal sexual conduct; or interference with an emergency call. Minn.Stat. § 518B.01, subd. 2(a) (2006).

Respondent here conceded that the conduct underlying the charges did not amount to "domestic abuse" under section 634.20. We must therefore determine whether this statute applies to trials not involving charges of domestic abuse. The threshold question for interpretation of a statute is whether its text is ambiguous. Minn.Stat. § 645.16 (2008). A statute is ambiguous if it is susceptible of more than one reasonable interpretation. *American Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001).

Section 634.20 is ambiguous because it is not clear on its face whether it applies to non-domestic-abuse charges. The statute's terms do not explicitly require the current charge to be domestic abuse, and the similar-conduct evidence it allows is "not limited to" the delineated acts. On the other hand, it plainly appears to be a domestic-abuse statute, as it refers to "the victim" of domestic abuse and defines "similar conduct" in terms reasonably understood to encompass acts related to domestic violence.

Our appellate courts have not directly addressed this question but have generally presumed that the statute only applies

when the charges include domestic abuse. In an opinion interpreting a different aspect of section 634.20, the supreme court stated that the statute's text means that "evidence of similar conduct *in domestic abuse trials* is relevant and admissible unless it should be excluded for the reasons listed." *State v. McCoy*, 682 N.W.2d 153, 159 (Minn.2004) (emphasis added). In *State v. Copeland*, this court said "the statute applies *only in cases where a person is charged with domestic abuse* and the state intends to introduce evidence of prior domestic abuse involving the accused and the victim of the currently charged offense." 656 N.W.2d 599, 602 (Minn.App. 2003) (emphasis added).

Analysis of the statute's text favors the domestic-abuse-only interpretation. The first sentence of the statute refers to "the accused," a reference to the person defending against the current charge. It mentions "similar conduct," a phrase that is meaningless without considering what the "conduct" to be proven is "similar" to, namely, the currently charged conduct. The reference to "the victim of domestic abuse" in the same sentence is reasonably understood as a reference to the victim of the current charge. *See ILHC of Eagan, LLC v. County of Dakota*, 693 N.W.2d 412, 419 (Minn.2005) (requiring phrases in statute to be read in context with other phrases). The text essentially requires the similar conduct and the current charge to have three things in common: the defendant, the victim, and domestic abuse.

■ Closer examination of the phrase "the victim of domestic abuse" supports the same conclusion. If the phrase were meant to refer to *any* past occurrence of domestic abuse, and not specifically to the current charge, the legislature would have used the indefinite article "a" instead of the definite article "the." The definite article is more specific, and is used to "de-note particular, specified persons or things." *The American Heritage Dictionary* 1859 (3d ed.1992). Here, the person whose relationship with the accused is to be illuminated by past conduct is not just "*a* victim of domestic abuse" but "*the* victim of domestic abuse." The domestic abuse referred to must be a specific instance, namely, the current charge.

Arguments for the alternative interpretation are reasonable, but unpersuasive. The district court focused on the phrase "similar conduct," concluding that section 634.20 applies whenever the past conduct and current charge are sufficiently similar, so long as the current victim has ever been a "victim of domestic abuse." The statute does state that admissible similar conduct is "not limited to" the types of domestic violence listed.

The first problem with this argument is that the "not limited to" language is more likely meant to encompass general testimony about the relationship, including conduct that does not rise to the level of the crimes listed in the definition of "similar conduct." Such evidence was admitted in this case, when G.M. described ongoing tension, arguments, or minor spats between her and appellant. The more troublesome aspect of the district court's interpretation, however, is that rules of evidence separately exist for the introduction of evidence of prior, non-domestic-abuse crimes in a trial for a current, non-domestic-abuse crime. *See State v. Ness*, 707 N.W.2d 676, 685–86 (Minn.2006) (explaining requirements for admission of *Spreigl* evidence). We see no reason to conclude that section 634.20 is meant to replace the *Spreigl* rule in cases other than those charging domestic abuse. *See McCoy*, 682 N.W.2d at 161 (stating that unique treatment of evidence under section 634.20 is "appropriate in the context of ... domestic abuse").

Under our interpretation, if the defendant is charged both with burglary and a domestic-abuse crime, the state can utilize section 634.20. *See State v. Bell* 719 N.W.2d 635, 640–42 (Minn.2006) (discussing statute in context of charges for burglary and violating an order for protection). But the state here conceded that the burglary incident did not qualify as domestic abuse under the statute defining it. When the state cannot charge a crime constituting domestic abuse, it may not use § 634.20 to circumvent rules of admissibility for prior bad acts. It was therefore error for the district court to rely on section 634.20 to admit the evidence of prior bad acts.

On appeal, the parties' arguments address whether the challenged testimony was alternatively admissible as general relationship evidence or *Spreigl* evidence. We agree that G.M.'s more general testimony about tensions and disagreements was admissible as relationship evidence without regard to section 634.20, and without being treated as *Spreigl* evidence. *See State v. Boyce*, 284 Minn. 242, 260, 170 N.W.2d 104, 115–16 (1969) (upholding admission of testimony, without notice, about prior "ill will or quarrels" between defendant and victim). Evidence illuminating the relationship between a defendant and victim is relevant, and appellant certainly understood that aspects of their relationship would be an issue in the case as he raised their relationship himself in his opening statement. The state was not required to provide notice that it would offer this evidence. *Id.*

■ But G.M.'s testimony about the three incidents described specific, prior, bad acts. Each incident constituted an uncharged crime on its own, close in time to the charged conduct. Such evidence heightens the concern that a defendant will be convicted not because of the charged conduct but "because he has escaped unpunished from other offenses." *State v. Spreigl*, 272 Minn. 488, 496, 139 N.W.2d 167, 172 (Minn.1965). The three incidents may not fairly be deemed mere relationship evidence and must be characterized as *Spreigl* acts and subject to *Spreigl* requirements. *See Boyce*, 284 Minn. at 260, 170 N.W.2d at 115 (distinguishing evidence "bearing directly on the history of the relationship" from evidence of prior, uncharged crimes). *Spreigl* evidence cannot be used unless the state gives notice. *Ness*, 707 N.W.2d at 685–86 (stating, as one of five requirements, that state must give notice of intent to offer *Spreigl* evidence). Appellant could only have fairly defended against this evidence if he had been given proper notice, which the state did not do. *See Boyce*, 284 Minn. at 260, 170 N.W.2d at 115 (stating that purpose of *Spreigl* notice "is to prevent a defendant from being taken by surprise and required to defend against charges of criminal conduct not embraced in the indictment"). Absent notice, testimony about the three incidents was inadmissible and we do not address any of the other *Spreigl* requirements.

Erroneous admission of evidence requires reversal of the conviction if there is a reasonable possibility it may have contributed to the conviction. *State v. Buchanan*, 431 N.W.2d 542, 550 (Minn.1988). Appellant bears the burden to show that he was prejudiced by the erroneous admission. *State v. Amos*, 658 N.W.2d 201, 203 (Minn.2003)

■ We conclude that appellant has failed to show that he was prejudiced by evidence of the three inadmissible incidents, for several reasons. First, the jury could only have acquitted appellant by arriving at some other explanation for the testimony of the eyewitnesses. Appellant's theory was that G.M. was trying to

frame him for a random burglary committed by an unknown person, but his own testimony established that he had been trying to get money from her for his share of the value of the marital house. And, in any event, two witnesses besides G.M. testified to appellant's actions that morning. The record provides no reasonable basis for the jury to conclude that the house guest and bus driver were lying when they placed appellant in the area, and not at home in bed as he claimed. Second, appellant's own testimony that he was at home that morning was undermined by his conspicuous unwillingness to offer *any* explanation of his whereabouts when he spoke to police after being arrested. On cross-examination at trial, appellant failed to articulate any credible reason why he did not simply tell police he had been home in bed that morning. Third, appellant admitted fleeing from the police at the shopping center, which can imply a consciousness of guilt. Again, his own testimony attempting to justify the flight likely did more harm than good, as it had the tendency to portray him as someone who frequently has run-ins with police dogs. The prosecutor did nothing impermissible to create this damaging impression.

In short, the prosecutor offered credible evidence about appellant's actions on August 25, 2007, that he failed to rebut when he chose to testify. Even without reference to the three inadmissible incidents, the state's case raised questions in jurors' minds for which appellant did not provide a plausible defense. The question before us is whether he now can show a reasonable probability that the jury would have acquitted him, absent the erroneous admission of evidence. We find no such probability in this record. The erroneous admission was harmless. *See* Minn. R.Crim. P. 31.01 ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.").

## III.

■ Appellant argues that the prosecutor committed reversible misconduct by implying that he failed to call witnesses to attest to his alibi. In his cross-examination of appellant, the prosecutor elicited the names of two people that appellant claimed saw him the morning of the burglary. The prosecutor asked, in both instances, whether the person could have been called as an alibi witness. In closing argument, the prosecutor stated that appellant "doesn't have to prove anything," but nonetheless invited the jurors to wonder why these people were not called if, in fact, they could verify appellant's alibi.

■■ Appellant did not object to the prosecutor's questions and statements. We therefore review for plain error. *State v. Ramey*, 721 N.W.2d 294, 299 (Minn. 2006). If the defendant establishes that an error occurred and that the error was plain, the burden shifts to the state to establish that the misconduct did not prejudice the defendant's substantial rights. *Id.* at 302. The state meets this burden if it can show that there is no reasonable likelihood that the misconduct had a significant effect on the jury's verdict. *Id.* Factors to consider in assessing whether the state has met this burden are "[1] the strength of the evidence against the defendant, [2] the pervasiveness of the improper suggestions, and [3] whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions." *State v. Jones*, 753 N.W.2d 677, 692–93 (Minn. 2008).

■ A prosecutor is not permitted to comment about the absence of a witness that the defendant might have called. *State v. Mayhorn*, 720 N.W.2d 776, 787 (Minn.2006). Such comments undermine the fundamental notion that the defendant

does not bear any burden of proof and also encourage the impermissible inference that the absent witnesses' testimony would be unfavorable. *Id.* Such comments constitute prosecutorial misconduct. *See id.* (finding error in unobjected-to question impugning defendant's failure to call an alibi witness).

■■■ Plain error has been established in this case because the prosecutor improperly commented on appellant's failure to call certain witnesses. The burden is on the state to establish that there is "no reasonable likelihood" that the impermissible references had a significant effect on the jury's verdict. We address the *Jones* factors in turn.

Under the first factor, the state had a very strong case against appellant, as discussed above. This weighs against the reasonable likelihood of a significant effect on the jury.

Under the second *Jones* factor, mentioning appellant's alibi witnesses is the only type of improper conduct by the prosecutor that appears in the record, and it did not figure prominently in respondent's case. On cross-examination of appellant, questions about his alibi consumed a significant portion, but most of the examination was proper. The questions implying appellant's failure to call two witnesses were only a small part of this line of questioning. The missing alibi witnesses were not prominently featured in the prosecutor's closing argument, receiving only one fleeting mention.

The third of the *Jones* factors also weighs in favor of harmlessness: appellant took the opportunity to address the prosecutor's improper implications on redirect. His attorney elicited statements explaining why appellant had not been able to call his alibi witnesses at trial. This bears directly on one of the concerns about this sort of misconduct by prosecutors, as it weakens the implication that the witnesses' testimony would have been unfavorable. As for the other concern—the implication that appellant bore some burden of proof—the prosecutor himself cautioned the jury on this issue, stating in closing argument that appellant did not have to prove anything. Although this does not make the prosecutor's statement less improper, it does weigh in the consideration of harmlessness.

Based on the *Jones* factors, particularly the strength of the state's case, we conclude that the state has met its burden. There is no reasonable likelihood that the prosecutor's misconduct in referring to appellant's failure to call witnesses had a significant effect on the jury's verdict.

## IV.

■■■ In his pro se brief, appellant argues that the representation provided by his trial counsel was constitutionally ineffective. Claims of ineffective trial counsel will be addressed on direct appeal only if the facts underlying the claim do not need to be developed beyond the district court record. *Torres v. State*, 688 N.W.2d 569, 572 (Minn.2004). In support of his argument, appellant has provided a number of documents with his brief, none of which are part of the district court record in this case. As such, they cannot be considered in this appeal, because they are not among "[t]he papers filed in the trial court, exhibits, and the transcript of the proceedings." Minn. R. Civ.App. P. 110.01. We note that a claim of ineffective trial counsel that could not be addressed on direct appeal may be raised in a subsequent post-conviction petition. *Torres*, 688 N.W.2d at 572.

## DECISION

Because evidence of prior incidents was not admissible under Minn.Stat. § 634.20

or otherwise, the district court erred in admitting testimony about these incidents. But this and the other claimed errors were harmless and do not require reversal. The record is insufficient to address appellant's ineffective-assistance-of-counsel claim.

**Affirmed.**