*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

## STATE OF MINNESOTA
## IN COURT OF APPEALS
## A13-1845

State of Minnesota,
Respondent,

vs.

Nathan John Valinski,
Appellant.

**Filed July 14, 2014**
**Affirmed**
**Larkin, Judge**

Scott County District Court
File No. 70-CR-13-4381

Patrick J. Ciliberto, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Larkin, Judge.

### U N P U B L I S H E D   O P I N I O N

**LARKIN**, Judge

Appellant challenges his conviction of felony domestic assault against his daughter, arguing that the district court erred by allowing evidence of his prior

convictions against the child's mother at his jury trial and by denying his motion for a mistrial. We affirm.

## FACTS

Respondent State of Minnesota charged appellant Nathan John Valinski with felony-level domestic assault, alleging that he hit his 12-year-old daughter, B.J.V. The criminal complaint alleges that B.J.V.'s mother, K.R., sent a text message to her estranged husband, J.R., stating that Valinski had hit K.R. J.R. called the police. During the ensuing investigation, J.R. told officers that approximately one week earlier, B.J.V. had bruises all over her body. B.J.V. told J.R. that Valinski had caused the bruising by hitting her.

A police officer interviewed K.R. K.R. told the officer that Valinski did not hit B.J.V. The officer also interviewed B.J.V. B.J.V. told the officer that Valinski was angry at K.R. and that Valinski had hit K.R. and her. The officer observed bruises on B.J.V.'s right thigh and arms, and she photographed the bruises.

The police arrested Valinski, and he provided a statement denying that he hit B.J.V. Valinski said that while he and K.R. were arguing, B.J.V. started to hit him with a dog leash. Valinski said that he merely grabbed and twisted B.J.V.'s wrist to stop her from hitting him. Valinski stated that he did not know what caused the bruising on B.J.V.'s arms or leg.

Before trial, the state moved the district court to allow "evidence of the history of the relationship, including past acts and occurrences of domestic abuse, between [Valinski] and B.J.V." under Minn. Stat. § 634.20 (2012). The state also provided notice

2

that it intended to offer evidence of additional offenses under Minn. R. Evid. 404(b). Lastly, the state moved the district court to allow the state to impeach Valinski with his prior felony convictions under Minn. R. Evid. 609.

Valinski moved for an order "prohibiting any prior criminal convictions . . . to be used against [him] for impeachment purposes"; "prohibiting the use of any *Spreigl* evidence against [him]"; "prohibiting any testimony regarding prior and/or subsequent alleged physical and/or verbal altercations and/or assaults committed or allegedly committed by [him] against victim and/or other persons"; and "prohibiting the admission of any testimony that purports to establish that [he] has an assaultive propensity or is otherwise apt to act in an assaultive manner."

The district court ordered that, if Valinski testified, the state could impeach him with "'sanitized felony' convictions." The district court denied the state's motion to admit *Spreigl* evidence and its motion to admit relationship evidence under Minn. Stat. § 634.20. But the district court ruled that "should the victim's mother [K.R.] testify, who apparently was an eye witness to the events that occurred, and should she testify favorably for [Valinski] . . . the [c]ourt then will permit the [s]tate to cross-examine her in an attempt to impeach her testimony by using the convictions of [Valinski] where she was the victim." The district court reasoned that "the probative value of that prior conviction would increase" if K.R. testified favorably for Valinski, "as it would then be relevant to the truthfulness of the testimony and the credibility of that witness."

At trial, the state called K.R. as a witness. K.R. testified that B.J.V. repeatedly hit Valinski with a dog leash and that Valinski merely grabbed her arm to restrain her. After

3

this testimony K.R. acknowledged, through leading questions by the prosecutor, that she was the victim of domestic assault on June 23, 2000, terroristic threats on September 14, 2000, and felony fifth-degree assault on November 22, 2000. K.R. further acknowledged that she was pregnant with B.J.V. when each offense occurred and that Valinski was convicted of committing all three offenses. K.R. also acknowledged that she was the victim of felony fifth-degree assault on December 10, 2006, and that Valinski was convicted of that offense as well.

B.J.V. also testified, but she was a reluctant witness. The district court allowed the state to use leading questions, and B.J.V. ultimately testified that Valinski had hit her and that the blows left marks on her arm and leg.

The jury found Valinski guilty, and the district court sentenced him to serve 39 months in prison. This appeal follows.

## DECISION

### I.

Valinski argues that "[t]he district court abused its discretion when it admitted [K.R.'s] testimony that she was the victim of four of [his] prior assault and terroristic threat convictions and that she was pregnant with his child during three of them." The district court allowed testimony regarding Valinski's prior convictions for the purpose of impeaching K.R.'s testimony, which favored Valinski. We review the district court's evidentiary ruling for an abuse of discretion. *See State v. Matthews*, 779 N.W.2d 543, 553 (Minn. 2010).

We begin our analysis with Minn. Stat. § 634.20, which provides that

> [e]vidence of similar conduct by the accused against the victim of domestic abuse, or against other family or household members, is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. "Similar conduct" includes, but is not limited to, evidence of domestic abuse . . . . "Domestic abuse" and "family or household members" have the meanings given under section 518B.01, subdivision 2.

This so-called "[r]elationship evidence is relevant because it illuminates the history of the relationship between the victim and defendant and may also help prove motive or assist the jury in assessing witness credibility." *Matthews*, 779 N.W.2d at 549 (quotation omitted).

Relationship evidence is treated differently than other "collateral" evidence, partly because "[d]omestic abuse is unique in that it typically occurs in the privacy of the home, it frequently involves a pattern of activity that may escalate over time, and it is often underreported." *State v. McCoy*, 682 N.W.2d 153, 161 (Minn. 2004). Thus, the stringent procedural requirements of Minn. R. Evid. 404(b) do not apply to relationship evidence admitted under section 634.20. *State v. Meyer*, 749 N.W.2d 844, 849 (Minn. App. 2008). Section 634.20 "specifically provides for the admission of evidence of 'similar conduct' by the accused unless it fails to meet a balancing test that considers whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *McCoy*, 682 N.W.2d at 159. For purposes of section 634.20, unfair prejudice "is not merely damaging evidence, [or] even severely damaging evidence; rather, unfair

5

prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Bell*, 719 N.W.2d 635, 641 (Minn. 2006) (quotation omitted).

In this case, K.R. testified that Valinski did not assault B.J.V. The district court allowed testimony regarding Valinski's prior assault and terroristic-threats convictions against K.R. to help the jury assess K.R.'s credibility. Essentially, the impeachment evidence illuminated the nature of the relationship between Valinski and K.R. *McCoy* establishes that the district court's ruling reflects a permissible use of relationship evidence under Minn. Stat. § 634.20. In *McCoy*,

> [t]he victim, respondent's wife, testified that she could not remember what she told the police regarding respondent's alleged assault. No one else was able to provide eyewitness testimony regarding the events that transpired. The district court's ruling allowing the admission of evidence of respondent's alleged prior assault of his wife allowed the state to present evidence that, if believed by the jury, could have assisted the jury by providing a context with which it could better judge the credibility of the principals in the relationship.

*McCoy*, 682 N.W.2d at 161; *see also Matthews*, 779 N.W.2d at 549 ("Relationship evidence is relevant because it . . . may also help . . . assist the jury in assessing witness credibility.").

Like the circumstances in *McCoy*, K.R. was an eyewitness to Valinski's alleged assault of B.J.V. K.R.'s testimony contradicted B.J.V.'s testimony. The district court's ruling allowing evidence of Valinski's prior assault and terroristic-threats convictions against K.R. allowed the state to present evidence that provided a context in which to better judge K.R.'s credibility.

6

Valinski argues that it is improper for this court to consider the admissibility of the challenged evidence under section 634.20 because the state did not appeal the district court's pretrial order. We disagree. In *State v. Grunig*, the supreme court stated that "[a] respondent can raise alternative arguments on appeal in defense of the underlying decision when there are sufficient facts in the record for the appellate court to consider the alternative theories, there is legal support for the arguments, and the alternative grounds would not expand the relief previously granted." 660 N.W.2d 134, 137 (Minn. 2003) (citing Minn. R. Crim. P. 29.04, subd. 6, and stating that this court erred by failing to apply the rule). Moreover, our reasoning is the same as the district court's: the evidence was admissible to help the jury assess K.R.'s credibility. Our affirmation is based on an "alternative argument" only because in ruling that the evidence was not admissible under section 634.20, the district court failed to recognize that section 634.20 evidence assists credibility determinations. *See Matthews*, 779 N.W.2d at 549; *McCoy*, 682 N.W.2d at 161.

Valinski also argues that the "danger of unfair prejudice was high" and that the relationship evidence "improperly suggest[ed] to the jury that [he] has the propensity to commit the charged crime or that he is a proper candidate for punishment because of his prior conduct." But the probative value of admitting the evidence was not "substantially outweighed by the danger of unfair prejudice." Minn. Stat. § 634.20. Allowing the jury to assess K.R.'s credibility in the context of her relationship with Valinski did not "persuade[] by illegitimate means" or give the state an "unfair advantage." *Bell*, 719 N.W.2d at 641. Moreover, the district court instructed the jury that the evidence

7

concerning Valinski's prior convictions was admitted only for "consideration in deciding whether the witness [K.R.] is telling the truth in this case" and not as evidence of Valinski's "character or conduct except as you may think it reflects on the believability of [K.R.]." The district court's cautionary instruction mitigated any potential for unfair prejudice, and this court presumes the jury followed the instruction. *See State v. Courtney*, 696 N.W.2d 73, 84 (Minn. 2005) ("The jury is presumed to have followed the instruction.").

In sum, the district court's admission of Valinski's prior convictions for the limited purpose of helping the jury to assess K.R.'s credibility as a witness was not an abuse of discretion, because admission for that purpose is allowed under Minn. Stat. § 634.20. *See Matthews*, 779 N.W.2d at 549; *McCoy*, 682 N.W.2d at 161. Because the evidence was admissible under section 634.20, we do not address the parties' arguments regarding admissibility under Minn. R. Evid. 404(b) (prohibiting "[e]vidence of another crime, wrong, or act . . . to prove the character of a person in order to show action in conformity therewith") or Minn. R. Evid. 616 (allowing evidence of bias "[f]or the purpose of attacking the credibility of a witness").

## II.

Valinski argues that the district court erred by denying his motion for a mistrial. During trial, the prosecutor asked J.R. if "most of the time that [he was] married to [K.R.], was [Valinski] in Iowa?" J.R. responded: "Most of the time, prison in Iowa." Valinski objected and moved for a mistrial. The district court instructed the jury to disregard the statement and denied Valinski's motion for a mistrial.

"[A] mistrial should not be granted unless there is a reasonable probability that the outcome of the trial would be different" if the event that prompted the motion had not occurred. *State v. Spann*, 574 N.W.2d 47, 53 (Minn. 1998). "[T]he district court is in the best position to evaluate whether prejudice, if any, warrants a mistrial." *State v. Marchbanks*, 632 N.W.2d 725, 729 (Minn. App. 2001). The denial of a motion for a mistrial is reviewed for an abuse of discretion. *State v. Jorgensen*, 660 N.W.2d 127, 133 (Minn. 2003).

"References to a defendant's prior criminal history can be unfairly prejudicial." *State v. McCurry*, 770 N.W.2d 553, 558 (Minn. App. 2009), *review denied* (Minn. Oct. 28, 2009). "The prosecutor has an obligation to caution its witnesses against making prejudicial statements." *Id*. "But a district court's appropriate curative instructions may be sufficient to overcome the harm caused by inadvertent references to prior convictions." *Id*.

In denying Valinski's mistrial motion, the district court relied on *McCurry*, in which this court found no abuse of discretion where a witness testified that the defendant "went to prison" for an "attempted sexual assault charge." *Id*. This court reasoned in *McCurry* that the "comment at issue . . . was isolated, a single reference to a prior crime," the prosecutor did not intentionally elicit the comment, the district court counseled the prosecutor to remind its witnesses not to mention the defendant's record, and the district court gave a thorough instruction, telling the jury "not [to] consider [the testimony] in any way." *Id*.

9

In this case, the district court reasoned that it "had given a prior instruction to the [j]ury that they might hear things that they would have to ignore"; it "reinforced that instruction by specifically instructing the [j]ury to disregard the answer that included the comment about prison immediately after it occurred"; "[t]he prosecutor met her obligation to caution the witness against further statements regarding incarceration or convictions"; "[t]he reference to prison only occurred once, in the context of a non-prejudicial question"; and the "comment was less prejudicial than the comment in *McCurry* where the statement included a reference to sexual assault."

Valinski does not distinguish *McCurry* or criticize the district court's application of *McCurry*. Instead, he relies on *State ex rel. Black v. Tahash*, in which a police officer testified that the defendant told him "that he had only seen [an accomplice] once since leaving Stillwater." 280 Minn. 155, 157, 158 N.W.2d 504, 505 (1968). The supreme court stated that "evidence of a defendant's prior criminal activity is inadmissible in a criminal prosecution" and remarked that "[t]here is no doubt that the officer's remark constituted prejudicial error which provided grounds for a mistrial." *Id.* at 157, 158 N.W.2d at 506. But this statement is dictum because "the sole issue raised on . . . appeal [was] whether [the defendant's] trial attorney competently represented him." *Id.* at 157, 158 N.W.2d at 505.

Valinski also relies on *State v. Strommen*, in which the supreme court considered "testimony elicited from the arresting officer that he knew Strommen on a first-name basis and from 'prior contacts and incidents.'" 648 N.W.2d 681, 687 (Minn. 2002). The supreme court concluded that the district court erred by admitting the statement and

10

reversed. *Id*. at 688-89. But the supreme court considered this testimony in conjunction with other erroneously admitted testimony that Strommen had previously "kicked in doors and . . . killed someone." *Id*. at 688. And the supreme court concluded that the testimonies at issue were prejudicial only after first concluding that "the purpose in asking the offending questions was to illicit a response suggesting that Strommen was a person of bad character who had frequent contacts with the police." *Id*. In this case, Valinski does not point to any other inadmissible testimony to demonstrate prejudice, and he does not claim that the prosecutor purposefully elicited the prison reference. *See State v. Richmond*, 298 Minn. 561, 563, 214 N.W.2d 694, 695 (1974) ("In cases involving the erroneous admission of [evidence permitting the jury to infer that defendant had a prior record], this court has attached importance to whether the prosecutor intentionally elicited such testimony.").

Moreover, the supreme court has not reversed in other cases involving references to a defendant's prior criminal history. *See State v. Haglund*, 267 N.W.2d 503, 506 (Minn. 1978) (affirming where reference to past incarceration "was of a passing nature" and the evidence of guilt was overwhelming); *Richmond*, 298 Minn. at 562-63, 214 N.W.2d at 695-96 (considering testimony that a "2-year-old photograph [was] 'taken at the LaCrosse Police Department'" and affirming because the prosecutor did not intentionally elicit the testimony and "evidence of defendant's guilt was so strong that it is very unlikely that the testimony played any substantial part in convincing the jury of defendant's guilt").

11

We base our determination of whether the district court abused its discretion on the particular circumstances of the case. On the record before us, we do not discern a "reasonable probability that the outcome of the trial would [have been] different" if J.R. had not referred to Valinski's time in prison. *See Spann*, 574 N.W.2d at 53. Nor do we discern any error in the district court's legal analysis of the issue. *See State v. Jedlicka*, 747 N.W.2d 580, 582 (Minn. App. 2008) ("The district court abuses its discretion if it misinterprets or misapplies the law." (quotation omitted)). We therefore conclude that the district court did not abuse its discretion by refusing to grant a mistrial.

**Affirmed.**