*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0627**

State of Minnesota,
Respondent,

vs.

Arron Scott King,
Appellant.

**Filed February 2, 2015
Affirmed
Hooten, Judge**

Anoka County District Court
File No. 02-CR-13-703

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Anthony C. Palumbo, Anoka County Attorney, Andrew T. Jackola, Assistant County Attorney, Anoka, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Rodenberg, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

On appeal from his conviction of aiding and abetting second-degree burglary, appellant argues that (1) his conviction must be reversed because the state did not

adequately corroborate the testimony of appellant's accomplice, and (2) the district court abused its discretion by denying his request for a mistrial. We affirm.

## FACTS

A residence in Blaine, Minnesota was broken into on the night of January 28, 2013, and several items were stolen. That night, a couple who lived in the same townhouse complex were driving home and saw two individuals wearing hooded sweatshirts walking out of their yard. One of the individuals appeared to be wearing a "dark colored hooded sweatshirt," while the other individual appeared to be wearing a gray hooded sweatshirt. One of the witnesses saw one of the individuals run to a vehicle and guessed that the witnesses had interrupted a robbery or act of vandalism, so he asked the other witness to dial 911 while he tried to view the vehicle's license plate. The two individuals got in the vehicle and tried to drive away, but were prevented from doing so by the witnesses, who had maneuvered their vehicle to block the suspects from leaving. The witnesses were able to read the license plate number to the 911 operator before the vehicle reversed course and drove away. The witnesses then advised the 911 operator that the vehicle had turned onto northbound Highway 65.

Following the 911 call, the emergency dispatcher notified the Blaine Police Department at 7:27 p.m. of a possible interrupted burglary in the townhouse complex. Around 7:38 p.m., Lucas Christofferson, an Anoka County sheriff's deputy, received a radio call from police dispatch advising him that the suspect vehicle might be nearing his location on Highway 65. Deputy Christofferson estimated that it would take 15 minutes in normal traffic for the suspects to reach his location from the Blaine residence. Deputy Christofferson decided to park his car at a crossover, "to see if the vehicle would pass

2

[by] where [he] was sitting." He waited several minutes before spotting the suspect vehicle. He proceeded to call for backup and pursue the vehicle.

The suspect vehicle immediately pulled over when Christofferson turned on his lights. Police found appellant Arron Scott King and Willie Darnell Guise in the vehicle and placed them under arrest. Guise had been driving and King was in the passenger seat. At the time of arrest, Guise was wearing a dark hooded sweatshirt and King was not wearing a sweatshirt, although a gray hooded sweatshirt was found in the backseat of the vehicle. Several items in the suspect vehicle were later identified as belonging to the victim of the Blaine burglary.

King was eventually charged with two counts of aiding and abetting second-degree burglary, as the state alleged that King and Guise had also committed a burglary in Fridley earlier the same night. A four-day jury trial was held at which the two witnesses, the victims of the two burglaries, and several police officers testified to the above facts. Per the terms of a plea agreement, Guise also testified against King at trial. Guise stated that he and King had burglarized the Blaine residence on January 28, 2013, and had also burglarized a second home in Fridley earlier that night. Guise testified that he had driven King to both the Fridley and Blaine burglaries, and that King had broken into both residences using a crowbar. King stole jewelry from the Fridley residence, and both King and Guise stole jewelry, money, DVDs, and a laptop from the Blaine residence. Guise testified that the two hurriedly left the Blaine residence after being spotted by witnesses, and they threw some of the stolen items and the crowbar out of the vehicle window before they were stopped and arrested.

3

The sole witness for the defense was a Minnesota Bureau of Criminal Apprehension forensic analyst. She examined shoe prints found outside the Blaine townhouse and opined that they were consistent with the shoes King was wearing that night, but could not rule out the possibility that the shoe prints were made by a different pair of shoes of a similar make and size.

The jury found King guilty of the Blaine burglary but acquitted him of the Fridley burglary. At sentencing, the district court found that King qualified as a career offender and sentenced him to 102 months in prison. This appeal followed.

## D E C I S I O N

### I.

King argues that the evidence produced at trial was insufficient to corroborate Guise's testimony that King was the second burglar with whom Guise committed the Blaine burglary. Accomplice testimony must be corroborated by other evidence showing defendant's guilt, and such evidence "is not sufficient if it merely shows the commission of the offense or the circumstances thereof." Minn. Stat. § 634.04 (2012). Instead, the evidence "'must link or connect the defendant to the crime'" and "'point to the defendant's guilt in some substantial degree'" in order to adequately corroborate accomplice testimony. *Turnage v. State*, 708 N.W.2d 535, 543 (Minn. 2006) (quoting *State v. Adams*, 295 N.W.2d 527, 533 (Minn. 1980)). Corroboration can come from other evidence showing "the defendant's association with those involved in the crime in such a way as to suggest joint participation, as well as from the defendant's opportunity and motive to commit the crime and his proximity to the place where the crime was committed." *Adams*, 295 N.W.2d at 533. The corroborating evidence can be either

4

direct or circumstantial. *State v. Johnson*, 616 N.W.2d 720, 727 (Minn. 2000). We review the sufficiency of corroborating evidence in the light most favorable to the state and resolve evidentiary conflicts in favor of the verdict. *Turnage*, 708 N.W.2d at 543.

At trial, Guise testified at length about King's role in the Blaine burglary. Guise detailed how, after the burglary, he and King left the Blaine residence and ran back to the vehicle, and stated that they left quickly because they were concerned they had been seen and were being followed by the witnesses. Guise testified that King was wearing a gray sweatshirt during the Blaine burglary and that King removed the sweatshirt in the vehicle afterward. Guise also confirmed that King was wearing shoes that night that matched shoe prints found near the Blaine residence. Guise denied that the vehicle stopped at any time between leaving the Blaine townhouse and being pulled over by the police.

In attempting to rebut Guise's testimony and provide an alternative explanation for King's presence in the vehicle, King's counsel asserted in closing arguments that Guise, after fleeing the scene of the burglary, dropped off his true accomplice and picked up King before being stopped by the police. But, there was no evidentiary support for this alternative explanation for King's presence in Guise's vehicle. And contrary to King's arguments on appeal, Guise's testimony that King participated in the burglary was corroborated in several material respects. Eyewitnesses saw Guise's vehicle leave the site of the burglary and head north on Highway 65. Approximately 15 minutes later, the police, who were expecting to see Guise's vehicle on Highway 65, stopped the vehicle and found King inside with stolen items from the Blaine burglary. King's presence in Guise's vehicle so soon after the crime establishes his proximity to the crime scene and involvement in the commission of the burglary. Moreover, additional circumstantial

5

evidence placed King at the scene of the crime. The second burglar was seen wearing a gray sweatshirt by both witnesses, and such a sweatshirt was found near King in the backseat of the vehicle. And while the shoe prints found at the scene do not conclusively identify King as the accomplice in Blaine, they were consistent with the shoes King was wearing when he was arrested and further bolster Guise's testimony.

Apart from Guise's testimony, the other evidence at trial connected King to the Blaine burglary by indicating his presence at the crime scene and in the getaway vehicle. Viewing the evidence in the light most favorable to the state and resolving all conflicts in favor of the conviction, we conclude that there was sufficient evidence to properly corroborate Guise's testimony and for the jury to reject King's version of events.

## II.

King argues that the district court abused its discretion by failing to grant a mistrial based on two allegedly prejudicial statements made by Guise at trial. Before trial, King moved to exclude any testimony or evidence regarding his prior incarceration, and the district court granted King's motion.

At trial, the following exchange occurred during redirect examination of Guise:

> PROSECUTOR: On January 28th, describe your friendship with Mr. King.
> GUISE: I don't know if I can really describe it. I mean, in the beginning our relationship was real, real good. It was solid. I felt like that was—he was a brother to me. But as the years went on, we just kind of grew apart. *He did some time in prison and—*

(Emphasis added). King's counsel immediately objected. The district court sustained the objection and instructed the jury to disregard Guise's statement. Unprompted, Guise then said, "I'm sorry. *But he did some time*[.]" (Emphasis added). When the jury left for a

6

lunch break soon thereafter, King's counsel moved for a mistrial. He was concerned that any warning given to Guise by the state about not mentioning King's criminal history was "ineffectual" and that the references to King serving time in prison were "going to stick with the jury."

The district court denied the motion for a mistrial. Following *State v. McCurry*, 770 N.W.2d 553 (Minn. App. 2009), *review denied* (Minn. Oct. 28, 2009), the district court found that there was not a "reasonable probability that the outcome of the trial would be different" absent Guise's remarks because the state had already shown "significant evidence of guilt." King then agreed to a curative instruction, and the district court used language directly from *McCurry* in instructing the jury to disregard Guise's statements about King's prior incarceration.

We review the denial of a mistrial motion for an abuse of discretion. *State v. Jorgensen,* 660 N.W.2d 127, 133 (Minn. 2003). "[A] mistrial should not be granted unless there is a reasonable probability that the outcome of the trial would be different." *State v. Spann*, 574 N.W.2d 47, 53 (Minn. 1998). "References to a defendant's prior criminal history can be unfairly prejudicial," but "a district court's appropriate curative instructions may be sufficient to overcome the harm caused by inadvertent references to prior convictions." *McCurry*, 770 N.W.2d at 558.

The district court did not abuse its discretion by denying King's motion for a mistrial. As found by the district court, *McCurry* is instructive here, as it contains a similar fact pattern on which this court held that a district court did not abuse its discretion by denying a mistrial. 770 N.W.2d at 558–59. As in *McCurry*, the state did nothing to elicit the two remarks about prison time. *See id.* at 558. And, while King

7

argues that *McCurry* contained only a single inadvertent remark as opposed to the two remarks in this case, the additional remark by Guise was unprompted and merely repeated that King "did some time." In *McCurry*, the witness indicated that the defendant "went to prison for an attempted sexual assault charge." *Id.* (quotations omitted). Two fleeting references to serving time in prison are likely not as prejudicial as a statement indicating that a defendant served time for a sex offense. Moreover, the district court gave a curative instruction directly from *McCurry*, and such an instruction "is a significant factor favoring the denial of a motion for a mistrial" in light of our "presumption that jurors follow instructions." *Id.* at 558–59 (quotation omitted).

The district court carefully considered the statements made by Guise and concluded that there was no reasonable probability that they would alter the outcome of the trial in light of the evidence already presented in support of King's guilt. The record does not show that the district court erred in making that conclusion. Under these circumstances, the district court did not abuse its discretion by denying King's motion for a mistrial and providing a curative instruction to the jury.

**Affirmed.**