*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0471**

State of Minnesota,
Respondent,

vs.

Dragos Valentine Bogza,
Appellant.

**Filed March 28, 2016
Reversed and remanded
Klaphake, Judge**[*]

Dakota County District Court
File No. 19HA-CR-13-1417

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Anna Light, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Reilly, Judge; and Klaphake, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KLAPHAKE**, Judge

On appeal from his conviction of felony domestic assault, appellant argues (1) the state failed to prove that appellant was "involved in" a significant relationship with J.B. because appellant and J.B. stopped dating six months before the alleged assault; and (2) he is entitled to a new trial because J.B.'s repeated nonresponsive outbursts asserting that appellant abused her deprived appellant of his right to a fair trial by an impartial jury. We reverse.

## DECISION

*Sufficiency of the Evidence*

Appellant Dragos Valentine Bogza argues that the state failed to prove beyond a reasonable doubt that appellant was "involved in a significant relationship with J.B. because [appellant] and J.B. stopped dating six months before the alleged assault." Although framed in terms of sufficiency of the evidence, appellant's argument requires us to first consider the statutory interpretation of the phrase "significant romantic or sexual relationship." *See State v. Tomlin*, 622 N.W.2d 546, 548 (Minn. 2001) (noting that before considering whether evidence was sufficient it was necessary to first determine what evidence is required for a conviction of obstructing legal process). Statutory construction is a question of law, which this court reviews de novo. *Id.* "Where the legislature's intent is clearly discernable from plain and unambiguous language, statutory construction is neither necessary nor permitted and we apply the statute's plain meaning." *Hans Hagen Homes, Inc. v. City of Minnestrista*, 728 N.W.2d 536, 539 (Minn. 2007); *see also* Minn.

2

Stat. § 645.16 (2014) (providing that when the language of a statute is "clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.").

Whoever does the following against a family or household member is guilty of misdemeanor domestic assault: (1) commits an act with intent to cause fear in another of immediate bodily harm or death; or (2) intentionally inflicts or attempts to inflict bodily harm. Minn. Stat. § 609.2242, subd. 1 (2012). The definition of "[f]amily or household members" is drawn from Minn. Stat. § 518B.01, subd. 2(b), and includes

> "(7) persons involved in a significant romantic or sexual relationship . . . . In determining whether persons are or have been involved in a significant romantic or sexual relationship under clause (7), the court shall consider the length of time of the relationship; type of relationship; frequency of interaction between the parties; and, if the relationship has terminated, length of time since the termination."

Minn. Stat. § 518B.01, subd. 2(b)(7) (2012). Appellant argues that because the statute requires that persons be "involved in" a relationship, the definition of family or household member does not include former significant relationships.

"[A] former relationship may qualify as a significant romantic or sexual relationship under [Minn. Stat. § 518B.01, subd. 2(b)(7) (2012)]." *Sperle v. Orth*, 736 N.W.2d 670, 672 (Minn. App. 2009). Appellant contends that this court has never applied *Sperle* to domestic assault and that the language and context of the "factor test" relied on in *Sperle* demonstrates it only applies to civil orders for protection. We disagree. A close reading of *Sperle* does not show that this court intended to limit its holding to OFP proceedings.

3

Moreover, because section 609.2242, subdivision 1, explicitly adopts the section 518B.01 definition of family or household member, the reasoning from *Sperle* clearly applies to other situations in which the definition of family or household member is incorporated. We conclude that the definition of "family or household member" includes former relationships based on application of the additional factors in section 518B.01, subd. 2(b).

Appellant next argues that, even assuming that the definition applies to former relationships, the evidence is insufficient to demonstrate that he and the victim were family or household members. When reviewing a challenge to the sufficiency of the evidence, we are limited to ascertaining whether the fact-finder could have found, after giving due regard to the presumption of innocence and the requirement of proof beyond a reasonable doubt, that appellant was guilty of the offense. *State v. Crow*, 730 N.W.2d 272, 280 (Minn. 2007). We carefully review the record to determine if the evidence in the light most favorable to the conviction was sufficient to permit the jury to convict. *State v. Pendleton*, 759 N.W.2d 900, 909 (Minn. 2009). Because the jury found the appellant guilty, we assume that the jury credited the state's witnesses and drew reasonable inferences in favor of the state. *State v. Jackson*, 726 N.W.2d 454, 460 (Minn. 2007).

In determining if a person is involved in a significant romantic or sexual relationship, the court considers "the length of time of the relationship; type of relationship; frequency of interaction between the parties; and, if the relationship has terminated, length of time since the termination." Minn. Stat. § 518B.01, subd. 2(b). Appellant and J.B. were in a significant, sexual relationship for two years. At the time of the assault, they still

4

had frequent interactions. Even though they were separated, appellant picked J.B. up "a lot of times" to take her shopping, something he had previously done. Additionally, appellant occasionally bought J.B. clothes. These contacts indicate that even though the sexual relationship had actually ended six months before the incident, there was still frequent social or romantic interactions between the parties and some reliance on appellant by J.B. The trial record indicates that appellant and J.B. still intended to engage in sexual activity at the time of the incident. Finally, the length of time the sexual relationship had been terminated is only one of the factors to consider, and is not solely determinative. Because all four statutory factors were met in this case, sufficient evidence to support a finding exists to show appellant and J.B.'s relationship qualifies as a significant romantic or sexual relationship under Minn. Stat. § 518B.01, subd.2(b).

*New Trial*

Appellant also argues that he is entitled to a new trial because, on four occasions during her testimony, J.B. asserted that appellant abused her and that he was a person with an abusive character, despite the district court's pretrial ruling to exclude relationship evidence involving appellant and J.B. The constitution guarantees every defendant the right to a fair trial, which includes the right to an impartial jury. *See* U.S. Const. amend. VI, XIV; Minn. Const. art. I. §§ 6, 7; *State v. Evans*, 756 N.W.2d 854, 863 (Minn. 2008). Exposing the jury to "potentially prejudicial material" may deprive a defendant of the right to an impartial jury. *State v. Hogetvedt*, 623 N.W.2d 909, 914 (Minn. App. 2001) (quotation omitted), *review denied* (Minn. May 29, 2001).

In analyzing whether a defendant has been deprived of the right to an impartial jury because of exposure to prejudicial material, this court must consider the nature and source of the prejudicial matter, the number of jurors exposed to the influence, the weight of the properly admitted evidence, and the likelihood that any curative measures were effective in reducing the prejudice. *Hogetvedt*, 623 N.W.2d at 914. In this case, the prejudicial statements were made by a key witness, appellant's former girlfriend, in front of the entire panel of jurors. The testimony was especially prejudicial because it was character evidence, showing that appellant had a propensity to commit assaults, in a case where appellant was on trial for domestic abuse.

The district court attempted to take curative measures to reduce the prejudice. Each time J.B. referred to appellant's assaultive behavior and appellant objected, the objection was sustained. The district court also reprimanded J.B. outside the jury's presence, but denied appellant's motion to hold J.B. in contempt. The district court also gave further curative instructions. In addition, the district court included the following instruction in its final charge to the jury:

> During this trial I have ruled on objections to certain testimony and exhibits. You must not concern yourself with the reasons for the rulings since they are controlled by rules of evidence . . . . You are not to speculate as to possible answers to questions I did not require to be answered. You are to disregard all evidence I have ordered stricken or have told you to disregard.

But even though in Minnesota the law presumes that jurors follow instructions, *State v. McCurry*, 770 N.W.2d 553, 558 (Minn. App. 2009), *review denied* (Minn. Oct. 28, 2009), "where . . . the impact of the prejudicial remark may be such as to impart to the minds of

the jury substantial prejudicial evidence not properly a part of the case, it is taking too much for granted to say its effect can be removed by an instruction from the court." *State v. Huffstutler*, 269 Minn. 153, 156, 130 N.W.2d 347, 349 (1964). We conclude that the prejudicial effect of the inadmissible evidence presented in the presence of the jury cannot be outweighed by the weight of the properly admitted evidence in this case. As such, we conclude that the repeated outbursts of witness J.B. deprived appellant of the right to a fair trial. Accordingly, we reverse the conviction and remand for a new trial.

      **Reversed and remanded.**