STATE of Minnesota, Respondent,

v.

Ronald James BELL, Appellant.

No. A04–1595.

Supreme Court of Minnesota.

July 27, 2006.

John M. Stuart, State Public Defender, Suzanne M. Senecal–Hill, Assistant State Public Defender, Office of the State Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, Susan Gaertner, Ramsey County Attorney, Jeanne L. Schleh, Assistant County Attorney, St. Paul, MN, for Respondent.

## OPINION

PAGE, Justice.

Appellant Ronald James Bell was convicted in Ramsey County District Court of first-degree burglary in violation of Minn. Stat. § 609.582, subd. 1(c) (2004), and violation of a no-contact order under Minn. Stat. § 518B.01, subd. 22(b) (2004). Bell appealed his conviction to the court of appeals, claiming that the trial court erred when it permitted, under Minn.Stat. § 634.20 (2004), the introduction of evidence of two previous incidents in which Bell violated an order for protection (OFP) involving the same victim. The court of appeals affirmed. *State v. Bell,* 703 N.W.2d 858 (Minn.App.2005). Bell petitioned for review and the state cross-petitioned for review. We granted both petitions.

In this appeal, Bell argues that the trial court erred in admitting the evidence of Bell's two prior OFP violations for three reasons: (1) the trial court failed to consider the state's need for the evidence; (2) the trial court failed to evaluate on the record the probative value of the evidence versus its potential for prejudice; and (3) the trial court erred in concluding that the probative value of the evidence was not substantially outweighed by its danger of unfair prejudice. In its cross-petition, the state contends that the court of appeals erred when it applied harmless error impact analysis to evidence it specifically held was admissible. We affirm the court of appeals as modified.

At the time of trial, D.N. and Bell had known one another for approximately 20 years and had previously been involved in a romantic but troubled relationship, during which they had lived together for a period of time. On May 21, 2002, D.N. sought and was granted an OFP against Bell. On two separate occasions, November 17, 2002, and March 28, 2003, Bell violated the OFP. He was arrested, charged, and convicted of both violations. On May 6, 2003, as part of Bell's probation for the March 28 OFP violation, the court issued a no-contact order prohibiting Bell from having any contact with D.N.

According to D.N., in the early morning hours of May 21, 2003, she was at home in bed with her boyfriend. At approximately 2:46 a.m., D.N. heard someone running up the back staircase of her home. When the individual reached the top of the stairs, D.N. recognized the person as Bell. Bell did not have permission to be in her house and was carrying a gun. According to D.N., Bell said "Bitch, I'm going to kill you now." Bell then beat both D.N. and her boyfriend with the gun, took D.N.'s jewelry and purse, and left the home as he had entered, by way of the back stairs. D.N. called 911. Two of D.N.'s cousins, who lived with D.N. and were home at the time of the incident, corroborated D.N.'s account. Bell was eventually arrested in Chicago and extradited to Minnesota for trial.

At the pretrial conference, the state moved to admit four prior instances of

domestic abuse between Bell and D.N.—including the November 17 and March 28 OFP violations—pursuant to Minn.Stat. § 634.20, which allows admission of evidence of similar conduct by the accused against an alleged victim of domestic abuse.[1] The trial court held that the November 17 and March 28 OFP violations were admissible but excluded the other two incidents, reasoning, "I don't think I have enough for clear and convincing evidence. And I think it probably is more prejudicial than probative."[2] The court did not say anything further about the probative value versus potential prejudice of admitting into evidence the November 17 and March 28 OFP violations.

Evidence of the two OFP violations was subsequently admitted at trial. D.N. testified that on November 17, 2002, Bell arrived at her home, threw a ladder through a window and then got into his truck and "started ramming his truck against the garbage cans of the back porch and against the cement porch of the house." The police were called, and Bell was arrested and eventually pleaded guilty to violating the OFP. D.N. further testified that on March 28, 2003, she came home from work, went to her bedroom, and found that Bell was in her bed and had taken money from her nightstand. D.N. asked Bell to return the money and leave her home, but he refused. D.N. then called the police. Bell was arrested, charged, and again pleaded guilty to violating the OFP. At the time the OFP evidence was admitted, the trial court did not give the jury an instruction limiting the use of the evidence, but the trial court did give a limiting instruction at the end of trial.

## I.

Bell invites us to adopt a rule that treats evidence offered under section 634.20 the same as we treat evidence admitted under Minn. R. Evid. 404(b).[3] Bell contends that, because relationship evidence[4] of-

---

**1.** Minnesota Statutes § 634.20 provides:

Evidence of similar conduct by the accused against the victim of domestic abuse, or against other family or household members, is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**2.** The trial in this case occurred before our decision in *State v. McCoy*, which held that the clear and convincing standard of Minn. R. Evid. 404(b) is inapplicable to evidence admitted under section 634.20. *See State v. McCoy*, 682 N.W.2d 153, 161 (Minn.2004).

**3.** Under Minn. R. Evid. 404(b):

Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith. It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *State v. Ness*, 707 N.W.2d 676, 685–86 (Minn.2006), we set out a five-step process for the admission of 404(b) evidence:

(1) the state must give notice of its intent to admit the evidence; (2) the state must clearly indicate what the evidence will be offered to prove; (3) there must be clear and convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

**4.** The term "relationship evidence" has generally been used to describe any evidence that is offered to illuminate the relationship between the accused and the alleged victim. As we stated in *McCoy*, evidence offered under section 634.20 is evidence of past conduct between the alleged victim and the accused that sheds light on the relationship between the two. *McCoy*, 682 N.W.2d at 159. Relationship evidence admitted under section 634.20 is a subtype of general relationship evidence. Throughout this opinion, we will distinguish between evidence offered generally as rela-

fered under section 634.20 is a subtype of 404(b) evidence, the procedural safeguards applicable to 404(b) evidence should be required. Specifically, he argues that we should apply our recent decision in *State v. Ness*, 707 N.W.2d 676 (Minn.2006), and require that trial courts consider the state's need for the evidence before admitting evidence under section 634.20. We decline to do so. In Ness, we were attempting to move away from the undue emphasis we had previously placed on the strength or weakness of the state's case. *See Ness*, 707 N.W.2d at 689–90. In doing so, we clarified that the strength or weakness of the state's case would no longer be considered an independent requirement for admission of 404(b) evidence and that the state's need for the evidence should be considered when the trial court balanced the probative value of the evidence against its potential for unfair prejudice. *Ness*, 707 N.W.2d at 690. We also noted that an independent necessity requirement "has become a shibboleth." *Id.*

■ Given the distinctions we have made between 404(b) evidence and evidence offered under section 634.20, along with the fact that *Ness* narrowed the appli-

cability of the need analysis, we decline now to require that trial courts engage in an independent analysis of the state's need for section 634.20 evidence before it is admitted. While we decline to require trial courts to engage in a separate analysis of need in order to admit evidence under section 634.20, we note that, as with 404(b) evidence, the need for section 634.20 evidence is naturally considered as part of the assessment of the probative value versus prejudicial effect of the evidence.

■ Bell also argues that we should adopt three additional 404(b) procedural requirements for admission of evidence under section 634.20: (1) limiting instructions; (2) a minimum burden of proof; and (3) notice. Bell raised this argument for the first time in his brief to this court.[5] Because Bell did not raise this issue below or in his petition for review, he has waived this issue on appeal. *See In re Glaxo-SmithKline PLC*, 699 N.W.2d 749, 757 (Minn.2005); *State v. Busse*, 644 N.W.2d 79, 89 (Minn.2002). Nonetheless, we are compelled to point out that, having considered and rejected a similar argument in *State v. McCoy*, 682 N.W.2d 153, 159–61 (Minn.2004),[6] we have no reason to revisit

---

tionship evidence and evidence offered specifically under section 634.20.

5. At the court of appeals, Bell argued that the trial court erred in giving a limiting instruction at the end of trial but not immediately before or after the evidence was presented to the jury. *Bell*, 703 N.W.2d at 863. However, the argument as made was not in the context of 404(b) procedural requirements. *See Bell*, 703 N.W.2d at 863.

6. Before our *McCoy* decision, relationship evidence was sometimes analyzed under Rule 404(b). *See, e.g., Lee*, 645 N.W.2d at 466. Yet, even then, the notice requirement applicable to the admission of 404(b) evidence was not applicable to general relationship evidence. *State v. Boyce*, 284 Minn. 242, 260, 170 N.W.2d 104, 115 (1969) (holding that the

state need not give pretrial notice of its intent to use general relationship evidence). In *McCoy*, we concluded that evidence offered under section 634.20 is not to be treated the same as 404(b) evidence. 682 N.W.2d at 159–61. In doing so, we distinguished 404(b) evidence from evidence offered under section 634.20, explaining that the latter

is at least conceptually distinct from *Spreigl* evidence, which is governed by Rule 404(b). *Spreigl* evidence is oftentimes evidence of an unrelated crime against another person, which is offered for the purposes listed in Rule 404(b), such as to show identity, opportunity, intent, or modus operandi. Evidence of prior domestic abuse against the alleged victim may be different from this type of *Spreigl* evidence for at least two reasons: it is evidence of prior conduct between the accused and the alleged victim

the subject. Therefore, we conclude that the trial court did not err when it admitted evidence of Bell's November 17 and March 28 OFP violations without first addressing the state's need for the evidence.

## II.

Bell next argues that the trial court erred when it did not make findings on the record with respect to the probative value versus potential prejudice of the November 17 and March 28 OFP violations. The state argues that there is no need for the trial court to make explicit findings regarding the probative value versus potential prejudice when evidence is admitted under section 634.20 because the evidence is relevant and presumptively admissible *unless* the danger of unfair prejudice substantially outweighs the probative value of the evidence.[7]

As noted, the state moved to admit four previous incidents of domestic abuse by Bell against D.N. under section 634.20. After the parties presented their arguments, the trial court considered all four incidents simultaneously and concluded that it would admit the November 17 and March 28 OFP violations but that it would exclude the other two incidents because they were "probably * * * more prejudicial than probative." That statement clearly indicates that the trial court considered the probative value versus potential prejudice of all four incidents. We therefore conclude, based on this record, that the trial court properly considered the probative value versus potential prejudice of the November 17 and March 28 OFP violations.

Moreover, in *State v. Lee*, we held that admission of relationship evidence was not error, despite the fact that the trial court did not, on the record, engage in the probative value versus potential prejudice balancing test. 645 N.W.2d 459, 467 (Minn.2002). While the evidence in *Lee* was offered generally as relationship evidence and not specifically under section 634.20, it was the type of evidence that could have been offered under section 634.20. Specifically, in *Lee*, the state offered testimony that the defendant had admitted to beating his wife, the victim, on an earlier occasion. 645 N.W.2d at 467. Lee claimed that the

---

and it may be offered to illuminate the history of the relationship, that is to put the crime charged in the context of the relationship between the two.

*McCoy*, 682 N.W.2d at 159 (footnote and citation omitted). We also said, "[O]ur precedent indicates that we have treated evidence that illuminates the history of the relationship between an accused and a victim differently than other, 'collateral' *Spreigl* evidence. We believe this different treatment is appropriate in the context of the accused and the alleged victim of domestic abuse." *McCoy*, 682 N.W.2d at 161. We went on to "expressly adopt Minn.Stat. § 634.20 as a rule of evidence for the admission of evidence of similar conduct by the accused against the alleged victim of domestic abuse." *McCoy*, 682 N.W.2d at 161.

7. In Bell's reply brief, he argues that the state's reading of section 634.20 violates the separation of powers because "if the district court is not required to make findings on the record on the admissibility of relationship evidence * * * the legislature is again making all of the evidentiary rulings, which leaves the [trial] court with no role whatsoever." This argument is flawed. First, even if the trial court is not required to make explicit findings on the record, it does not follow that the court is left with no role whatsoever. The trial court is required to balance the probative value versus the potential prejudice of the evidence. The issue is simply whether that balancing must be explicit on the record or whether it is implied through admission of the evidence. Second, we have already held that section 634.20 does not violate the separation of powers because, as we discussed earlier, we have specifically adopted section 634.20 as a rule of evidence. *McCoy*, 682 N.W.2d at 160–61. Therefore, Bell's separation of powers argument is without merit.

trial court erred when it "failed to consider whether the probative value of the relationship evidence outweighed its prejudicial effect." *Id.* We held that the trial court did not abuse its discretion when it admitted the evidence. *Id.* We see no reason to treat this case differently.

### III.

■■■■ Bell next asks us to reach the merits of whether the admission of the November 17 and March 28 OFP violations was error because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. "[E]vidence of similar conduct in domestic abuse trials is relevant and admissible unless" the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *McCoy,* 682 N.W.2d at 159. "[W]e have on numerous occasions recognized the inherent value of evidence of past acts of violence committed by the same defendant against the same victim." *State v. Williams,* 593 N.W.2d 227, 236 (Minn.1999). When balancing the probative value against the potential prejudice, unfair prejudice "is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Schulz,* 691 N.W.2d 474, 478 (Minn. 2005). Evidentiary rulings rest within the discretion of the trial court and will not be reversed absent a clear abuse of discretion. *State v. Robinson,* 604 N.W.2d 355, 363 (Minn.2000).

■■■■ There is no question here that both the November 17 and March 28 OFP violations were probative of a material fact, namely, the history of D.N. and Bell's relationship. At the same time, we see nothing particularly inflammatory or unfairly prejudicial in the evidence that was admitted. Therefore, we conclude that the trial court did not abuse its discretion when it admitted evidence of the November 17 and March 28 OFP violations.

### IV.

Finally, we turn to the issue the state raised in its cross-petition for review, that the court of appeals erroneously applied a harmless error analysis to evidence it determined was admissible. To give context to the state's claim, we will first outline the steps the court of appeals took in rendering its harmless error analysis.

The court of appeals held that the trial court erred by not engaging in an on-the-record analysis of the probative value versus the prejudicial effect of the section 634.20 evidence. *Bell,* 703 N.W.2d at 864. In so holding, the court of appeals appears to have made two mistakes. First, the holding is based on the erroneous belief that the trial court did not consider and decide whether the probative value of the evidence relating to the November 17 and March 28 OFPs was substantially outweighed by its potential prejudice. *See id.* at 862–63. As discussed above, however, the record indicates that the trial court did consider and decide that issue. Second, implicit in the court of appeals' holding is the requirement that the trial court place its probative value versus prejudicial effect analysis on the record. *See id.* at 864. The court of appeals' opinion does not cite, and our research has not produced, any case law supporting such a requirement.

Had the court of appeals reached the correct determination of those two issues, it would not have needed to go further. However, because it incorrectly held that the trial court erred in the procedure it used to admit the section 634.20 evidence, the court went on to hold that, had the trial court used what the court of appeals concluded to be the proper procedure, the evidence would have been admissible be-

cause it was more probative than prejudicial. *Bell,* 703 N.W.2d at 864. The court's holding that, despite the procedural error, the evidence would have been admissible is implicitly a holding that the procedural error was harmless. Having implicitly found the procedural error to be harmless, the court's inquiry should have ended there, but it did not. Instead, the court went on to consider whether the admission of the evidence had a significant effect on the verdict. *Id.* at 863–64.

▮ Our first observation about what the court did is the obvious one. If the evidence was admissible there was no need to engage in a harmless error analysis to determine whether the otherwise admissible evidence had a significant effect on the verdict. Our second observation is that the court's consideration of that question creates confusion. By framing the question in terms of whether the evidence significantly affected the verdict, the court suggests that there was an error in admitting the evidence. In fact, the court held that there was an error in the procedure used to admit the evidence, not that the evidence was inadmissible. Thus, the evidence was *not* admitted in error.

Affirmed as modified.