STATE of Minnesota, Respondent,

v.

**Ronald James MEYER, Appellant.**

No. A06–2335.

Court of Appeals of Minnesota.

June 3, 2008.

Lori Swanson, Attorney General, St. Paul, MN and Patrick Ciliberto, Scott County Attorney, Michael J. Groh, Assistant County Attorney, Shakopee, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Suzanne M. Senecal–Hill, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by WRIGHT, Presiding Judge; PETERSON, Judge; and STONEBURNER, Judge.

## OPINION

WRIGHT, Judge.

In this appeal from a conviction of gross-misdemeanor domestic assault, appellant argues that the district court committed reversible error by (1) admitting evidence of prior domestic abuse under Minn.Stat. § 634.20 (2004); and (2) failing to instruct the jury regarding the use of such evidence. We affirm.

## FACTS

On the night of June 5, 2006, security personnel at Mystic Lake Casino Hotel observed an intoxicated person, later identified as appellant Ronald Meyer, in the

passenger seat of a vehicle parked under the valet canopy. After unsuccessfully attempting to ascertain from Meyer the identity of the vehicle's missing driver, the security officers obtained information from the surveillance camera and found the driver inside the entrance near the glass doors. The driver, N.D., was advised that, because of his degree of intoxication, her boyfriend, Meyer, would not be allowed on the premises. The security officers asked N.D. to take Meyer off the property. N.D. agreed to do so and drove away from the valet area. But rather than leave the property, N.D. moved the vehicle to the top level of the parking ramp.

A surveillance camera located at the top level of the parking ramp recorded an altercation between Meyer and N.D. during which Meyer attempted to restrain N.D. by the arm. N.D. subsequently broke away from Meyer's grasp and got out of the vehicle. Shortly thereafter, security personnel arrived at the scene and the police also were summoned. Prior Lake Police Officer John Rozga recorded a statement that he took from N.D. in his squad car at the scene. According to N.D., Meyer, who had been drinking since noon, was extremely intoxicated. During their drive to Mystic Lake Casino, Meyer had been both verbally and physically abusive toward N.D. When she arrived at the valet stand, she got out of the vehicle to escape from Meyer. After being denied entrance to the casino, she drove to the top level of the parking ramp because she was still concerned for her safety. While parked in the ramp, Meyer twisted N.D.'s arm behind her back, which caused N.D. pain. N.D. advised Officer Rozga that Meyer should be arrested for his actions.

Following the on-the-scene investigation, Meyer was arrested and charged with felony domestic assault, a violation of Minn. Stat. § 609.2242, subd. 4 (2004). The case proceeded to trial. On the first day of trial, the state amended the complaint and reduced the charge to gross-misdemeanor domestic assault, a violation of Minn.Stat. § 609.2242, subd. 2 (2004).

A Mystic Lake Casino security supervisor who witnessed the altercation on the surveillance monitor testified regarding the events that he observed. N.D. also testified, but her testimony differed from her recorded statement to Officer Rozga on the night of the incident. N.D. testified that she and Meyer did not argue on the way to Mystic Lake Casino. When she arrived at the valet stand, she left the vehicle solely to get some cash, not to get away from Meyer. When she drove to the parking ramp, she got out of the vehicle without any resistance from Meyer. Indeed, Meyer had "passed out" or was "in and out of consciousness" when she parked in the parking ramp. According to N.D.'s testimony, she wanted to let Meyer "sleep it off" because he often became angry when he was intoxicated. To keep N.D. from leaving the car, Meyer grabbed her arm and told her not to leave because he did not want to be left alone. N.D. also denied fearing for her safety that evening or wanting to have Meyer arrested.

The state offered under Minn.Stat. § 634.20 (2004) the following three incidents of prior criminal acts that Meyer committed against N.D.: (1) an incident in January 2006 in which Meyer became verbally and physically abusive toward N.D. and her 16–year–old son; (2) a gross-misdemeanor domestic-assault conviction from August 2001 that resulted from Meyer threatening to strike N.D. while she was driving; and (3) a misdemeanor domestic-assault conviction from November 2000 that resulted from Meyer threatening and assaulting N.D. in a vehicle, causing N.D. to escape to a convenience store.

Meyer subsequently was convicted of gross-misdemeanor domestic assault. This appeal followed.

## ISSUES

I. Did the district court abuse its discretion by admitting under Minn.Stat. § 634.20 (2004) evidence of three prior incidents of domestic abuse?

II. Did the district court commit reversible error when it failed to give cautionary instructions pertaining to evidence admitted under Minn.Stat. § 634.20 either before the introduction of this evidence or as part of the final jury instructions?

## ANALYSIS

### I.

■■■ Evidentiary rulings ordinarily rest within the sound discretion of the district court. *State v. Amos,* 658 N.W.2d 201, 203 (Minn.2003). When challenging a district court's evidentiary ruling, an appellant must establish both that the district court abused its discretion and that, as a consequence, the appellant was prejudiced. *Id.*

■■■ Minn. R. Evid. 404(b) provides that "[e]vidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." This proscription is founded on the inherent danger of a fact-finder relying on such character evidence as proof that the defendant is guilty of the charged offense. *State v. Spreigl,* 272 Minn. 488, 496, 139 N.W.2d 167, 172 (1965). But under rule 404(b), there are permissible uses for other-bad-act evidence, such as to demonstrate "motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident." Minn. R. Evid. 404(b). When evidence of other bad acts, or *Spreigl* evidence, is to be used for these purposes:

> (1) the state must give notice of its intent to admit the evidence; (2) the state must clearly indicate what the evidence will be offered to prove; (3) there must be clear and convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

*State v. Ness,* 707 N.W.2d 676, 686 (Minn. 2006).

■■■ In cases involving domestic violence, Minn.Stat. § 634.20 (2004) governs the admissibility of a discrete category of other bad acts.[1] Minn.Stat. § 634.20 provides as follows:

> Evidence of similar conduct by the accused against the victim of domestic abuse, or against other family or household members, is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

When evidence is offered under section 634.20, it is not *Spreigl* evidence because it is not offered to demonstrate motive, opportunity, intent, or modus operandi. *State v. McCoy,* 682 N.W.2d 153, 159 (Minn.2004). Rather, this evidence is offered to demonstrate the history of the relationship between the accused and the victim of domestic abuse. *Id.* Section

---

1. Minn.Stat. § 634.20 was expressly adopted by the Minnesota Supreme Court as "a rule of evidence for the admission of evidence of similar conduct by the accused against the alleged victim of domestic abuse." *State v. McCoy,* 682 N.W.2d 153, 161 (Minn.2004).

634.20 is tailored to address the unique nature of domestic violence, which often is difficult to prosecute because of the abuser's control over the victim. *Id.* at 161. Evidence is admissible under section 634.20 if (1) it is similar conduct by the accused, (2) it is perpetuated against the victim of domestic abuse or against another family or household member, and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Minn.Stat. § 634.20; *McCoy,* 682 N.W.2d at 159.

■ Despite many similarities between evidence admitted under section 634.20 and evidence admitted under rule 404(b), the stringent procedural requirements of rule 404(b) do not apply to section 634.20 evidence. *State v. Bell,* 719 N.W.2d 635, 638–39 (Minn.2006); *State v. Meldrum,* 724 N.W.2d 15, 20 (Minn.App.2006), *review denied* (Minn. Jan. 24, 2007). For example, the state is required neither to provide notice of the evidence nor to prove it by clear and convincing evidence. *McCoy,* 682 N.W.2d at 159–61. In addition, when considering its admissibility, the district court is not required to independently consider the state's need for such evidence as "the need for section 634.20 evidence is naturally considered as part of the assessment of the probative value versus prejudicial effect of the evidence." *Bell,* 719 N.W.2d at 639.

Thus, Meyer's challenge to the admissibility of the section 634.20 evidence on the ground that it was not needed to strengthen the state's case fails. Indeed, the state's evidence was strong in light of the surveillance video, the testimony of the security supervisor who observed the al-tercation, and the impeachment of N.D.'s testimony with her on-the-scene statement given to Officer Rozga. But the *Bell* court expressly rejected the need-based test that Meyer advances. *Id.* Accordingly, the absence of an independent analysis of the state's need for the section 634.20 evidence does not constitute error.

■ Meyer does not dispute that the three prior offenses against N.D. constitute the type of "similar conduct" contemplated in section 634.20.[2] But he argues that the district court abused its discretion by admitting the evidence because its probative value was substantially outweighed by the danger of unfair prejudice. In support of his assignment of error, Meyer contends that the highly inflammatory evidence not only "painted him to be a serial abuser," but also led the jury to find him guilty based on his past conduct rather than the evidence relating to the charged offense.

■ When balancing the probative value of evidence against its prejudicial impact, "unfair prejudice" is not merely damaging evidence, nor is it severely damaging evidence. *Id.* at 641. Evidence satisfies the unfair-prejudice test when it persuades by illegitimate means and gives one party an unfair advantage. *Id.*

After providing conflicting accounts of the events of June 5, N.D.'s credibility was at issue. The relationship evidence assisted the jury "by providing a context with which it could better judge the credibility of the principals in the relationship." *McCoy,* 682 N.W.2d at 161. Here, the three prior acts "shed[ ] light on the relationship" between Meyer and N.D.; and they have probative value because they

2. " 'Similar conduct' includes, but is not limited to, evidence of domestic abuse, violation of an order for protection under section 518B.01; violation of a harassment restraining order under section 609.748; or violation of section 609.749 or 609.79, subdivision 1. 'Domestic abuse' and 'family or household members' have the meanings given under section 518B.01, subdivision 2." Minn.Stat. § 634.20.

explained why N.D. may have testified in a manner contrary to her earlier statement. *Bell*, 719 N.W.2d at 639 n. 4; *McCoy*, 682 N.W.2d at 159. This purpose is consistent with the rationale for treating "evidence that illuminates the history of the relationship between a victim and the accused differently from other, *Spreigl* evidence." *See McCoy*, 682 N.W.2d at 159, 161 (reasoning that history of domestic abuse may prevent victim from testifying truthfully). Moreover, Minnesota courts have recognized the inherent probative value of evidence of past acts of violence committed, as here, by the same defendant against the same victim. *Bell*, 719 N.W.2d at 641. Because the three prior acts of domestic violence were probative of the relationship history between Meyer and N.D. and provided a context in which to examine N.D.'s credibility, the district court did not abuse its discretion by admitting this evidence under Minn.Stat. § 634.20.

■ Meyer also contends that the district court erred by failing to make express findings as to the probative value versus the potential for unfair prejudice. Although the district court did not make an express finding on probative value versus prejudicial impact, the record establishes that the district court referred to the appropriate legal standard and caselaw governing the admission of section 634.20 evidence. Moreover, failing to address the balancing test on the record is not erroneous. *Bell*, 719 N.W.2d at 640–41 (discussing *State v. Lee*, 645 N.W.2d 459, 467 (Minn.2002)).

## II.

■ Meyer also argues that the district court's failure to give cautionary instructions specifically pertaining to the relationship evidence either before its introduction or as part of the final instructions was reversible error. But Meyer did not request such instructions, nor did he object to the final jury instructions on this ground. We, therefore, apply a plain-error analysis on review. *State v. Crowsbreast*, 629 N.W.2d 433, 437 (Minn.2001). Plain error exists when the district court commits an obvious error that affects the criminal defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998). Plain error will be corrected on appeal "if it seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Meldrum*, 724 N.W.2d at 20 (alteration in original) (quotations omitted).

■ It is a preferred practice for a district court to instruct the jury regarding the use of section 634.20 evidence both when the evidence is received and in the final jury charge. *Id.* at 22. But we have held that the failure to supply limiting instructions to the jury "does not *automatically* constitute plain error," particularly when other evidence shows that the probative value of the other-bad-acts evidence is not outweighed by its potential for unfair prejudice. *Id.*

Our examination of the record makes evident that Meyer's conviction is supported by other evidence that is much more persuasive than the relationship evidence, including the surveillance video that clearly recorded the entire assault; N.D.'s detailed description of the assault given to Officer Rozga shortly after it occurred; and the testimony of the security supervisor who witnessed the assault as it occurred. Because this evidence significantly lessened any risk of unfair prejudice from the relationship evidence, Meyer's plain-error challenge to his conviction fails.

## DECISION

The admission of evidence relating to three prior acts of domestic abuse under Minn.Stat. § 634.20 (2004) was not an

abuse of discretion. And although it is a preferred practice for a district court to instruct the jury regarding the use of section 634.20 evidence both when the evidence is received and in the final jury charge, the failure to do so here does not constitute reversible error.

**Affirmed.**