*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-0697**

State of Minnesota,
Respondent,

vs.

Stacy Dean Darrell,
Appellant.

**Filed March 2, 2015**
**Affirmed**
**Johnson, Judge**

Hennepin County District Court
File No. 27-CR-13-28414

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Worke, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

A Hennepin County jury found Stacy Dean Darrell guilty of first-degree burglary and second-degree assault based on evidence that he physically assaulted a woman and

threatened her while inside her apartment building. On appeal, Darrell argues that the district court erred by admitting evidence of the history of his relationship with the victim and by denying his motion for a mistrial. We affirm.

**FACTS**

This appeal arises from a tumultuous relationship between Darrell and A.B., a woman with whom he had an on-and-off relationship between 2007 and 2010. Darrell and A.B. reunited for a short time in 2013. When A.B. tried to end the relationship in July 2013, Darrell demanded that they stay together.

On August 26, 2013, while A.B. was away from home, Darrell called her several times and asked to meet at her apartment, where he was waiting for her. When Darrell stopped calling her, A.B. believed that he had left the apartment and felt that she could return home. But as she walked through the secured entrance of her apartment building, Darrell "popped up behind [her] out of the blue," grabbed her, and forced her into her apartment. He put a hand around her throat. When he briefly let her go, she grabbed a knife from the kitchen. He wrestled the knife from her as they moved into the bedroom. She fell back on the bed, he held the knife over her, and he threatened to kill her. When she asked for some water, he let her go, and she ran outside. A neighbor saw her and called the police. Minneapolis Police Officer Justin Young responded to the report. Officer Young spoke to A.B. and surveyed the inside of the apartment.

On August 30, 2013, the state charged Darrell with one count of first-degree burglary with a dangerous weapon, in violation of Minn. Stat. § 609.582, subd. 1(b)

(2012), and one count of second-degree assault with a dangerous weapon, in violation of Minn. Stat. § 609.222, subd. 1 (2012).

The case was tried on three days in December 2013. At the beginning of trial, the state moved to admit evidence of the history of Darrell's relationship with A.B. The state sought to introduce evidence of Darrell's conduct on three specific days: (1) a January 8, 2010 incident in which Darrell hit A.B.; (2) a series of text messages and a voice-mail message on July 31, 2013, which were threatening in nature; and (3) a September 7, 2013 incident in which Darrell sent a threatening text message, came to A.B.'s apartment, and pounded on her door. The district court granted the state's motion, over Darrell's objection.

The state called two witnesses at trial: A.B. and Officer Young. The state introduced into evidence text messages that Darrell sent to A.B., photographs of A.B.'s injuries, and an audio-recording of a voice-mail message that Darrell left for A.B. The defense did not present any evidence. The jury found Darrell guilty of both charges. The district court sentenced him to 58 months of imprisonment on the conviction of first-degree burglary. Darrell appeals.

**D E C I S I O N**

**I. Relationship Evidence**

Darrell argues that the district court erred by admitting evidence concerning the history of his relationship with A.B. Darrell's argument encompasses all three types of evidence that the state included in its motion at the beginning of trial. With respect to the first incident, which occurred on January 8, 2010, A.B. testified that she and Darrell "got

into an altercation and he hit me, and I called the police." A.B. also testified that she had a bruise on her face after the incident. With respect to the second set of incidents, which occurred on July 31, 2013, A.B. testified by reading a series of threatening text messages, which included violent statements such as, "You a dead b--ch." The state also introduced a transcript of a voice-mail message in which Darrell said, "B--ch, I'm a kill you on sight. As soon as I see your mother f---ing a--. Mark my words, b--ch." With respect to the third incident, which occurred on September 7, 2013, A.B. testified that Darrell sent her a text message that read: "B--ch, I'm going to f--- you up. Watch me." A.B. also testified that, five hours later, Darrell came to her apartment and knocked on her door and windows.

"Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). But such evidence may be admissible for another purpose, such as evidence of past abuse or threats against the victim in order to show a strained relationship. *State v. Bauer*, 598 N.W.2d 352, 365 (Minn. 1999). "Character evidence which tends to show the 'strained relationship' between the accused and the victim is relevant to establishing motive and intent and is therefore admissible." *State v. Mills*, 562 N.W.2d 276, 285 (Minn. 1997). Evidence of a defendant's prior acts also may be relevant "for the purpose of illuminating the relationship of defendant and complainant and placing the incident with which defendant was charged in proper context." *Bauer*, 598 N.W.2d. at 364 (quotation omitted).

In addition, in a prosecution for domestic abuse:

4

> Evidence of domestic conduct by the accused against the victim of domestic conduct, or against other family or household members, is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Minn. Stat. § 634.20 (2014); *see also State v. McCoy*, 682 N.W.2d 153, 159 (Minn. 2004). Evidence admitted pursuant to section 634.20 is commonly known as "relationship evidence." *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010). Section 634.20 applies only in domestic-abuse cases, *see State v. Barnslater*, 786 N.W.2d 646, 650 (Minn. App. 2010), *review denied* (Minn. Oct. 27, 2010), and "allows much more latitude" than the exception to rule 404(b), *State v. Word*, 755 N.W.2d 776, 784 (Minn. App. 2008).

In this case, A.B.'s testimony about other incidents in her relationship with Darrell was relevant because the charges of burglary and assault arose from Darrell's strained relationship with A.B. To prove that Darrell committed first-degree burglary, the state was required to prove that Darrell "enter[ed] a building without consent and *with intent* to commit a crime." Minn. Stat. § 609.582, subd. 1(b) (emphasis added). To prove that Darrell committed second-degree assault, the state was required to prove that Darrell committed "an act done with intent to cause fear in another of immediate bodily harm or death." Minn. Stat. §§ 609.02, subd. 10, .222, subd. 1. Darrell's pattern of making angry, threatening statements to A.B., which made specific reference to acts of violence, has probative value because it may have helped the jury to determine whether Darrell intended to make A.B. fearful and, therefore, intended to commit a crime inside her

5

apartment building. The history of abuse by Darrell against A.B., if believed, would make it more likely that Darrell intended to carry out the threats he made on the night in question. Thus, the evidence had probative value of Darrell's intent and motive.

In addition to its probative value concerning Darrell's actions, the relationship evidence also may have been helpful to the jury because the defense attacked A.B.'s credibility. *See State v. Meyer*, 749 N.W.2d 844, 849-50 (Minn. App. 2008). The defense questioned the authenticity of the text messages and the voice-mail messages that A.B. testified to receiving on August 26, 2013, implying that A.B. may have been too drunk to remember the details. The text messages may have corroborated A.B.'s testimony, thus helping the jury assess her credibility. *See id.*

Darrell's contentions are most vigorous in challenging the admission of the third category of relationship evidence, the text messages and voice-mail message from July 31, 2013, because they were "highly prejudicial, had no probative value whatsoever," and were "so inflammatory and violent that it would have been impossible for the jury to not have been influenced by such evidence." Although the text messages and the voice-mail message contain graphic threats and profanity, the tone of the messages may be relevant to show the degree of Darrell's anger and determination to cause fear of harm to A.B. Even "'severely damaging'" evidence is admissible, unless it persuades by illegitimate means. *State v. Lindsey*, 755 N.W.2d 752, 757 (Minn. App. 2008) (quoting *State v. Bell*, 719 N.W.2d 635, 641 (Minn. 2006)), *review denied* (Minn. Oct. 29, 2008). Despite the inflammatory nature of the messages, a district court still

could reasonably determine that the probative value is not "substantially outweighed by the danger of unfair prejudice." *See* Minn. Stat. § 634.20.

It is worth noting that the district court gave the jury a curative instruction that directed them to consider the relationship evidence only for the limited purpose of determining whether Darrell committed the alleged conduct. In this situation, a cautionary instruction "lessen[s] the probability of undue weight being given by the jury to the evidence." *Lindsey*, 755 N.W.2d at 757 (quotation omitted); *see also* Minn. R. Evid. 105 (providing for limiting instruction).

The supreme court has stated and restated that "the 'interests of justice are best served' by admitting relationship evidence when it provides context for the crime charged" because "[t]he crime of domestic abuse is 'unique in that it typically occurs in the privacy of the home, it frequently involves a pattern of activity that may escalate over time, and it is often underreported.'" *Matthews*, 779 N.W.2d at 553 (quoting *McCoy*, 682 N.W.2d at 159, 161). The appellate courts have fulfilled the purpose of section 634.20 by affirming the introduction of relationship evidence in similar situations. *See, e.g.*, *id.*; *McCoy*, 682 N.W.2d at 161; *Word*, 755 N.W.2d at 784. The district court's ruling in this case is consistent with the prior opinions of the supreme court and this court. Thus, the district court did not err by admitting the state's relationship evidence.

## II. Motion for Mistrial

Darrell also argues that the district court erred by denying his motion for a mistrial and by not giving a curative instruction after A.B., on cross-examination by his own defense counsel, testified that Darrell was in jail.

On cross-examination, defense counsel questioned A.B. about why she let Darrell back into her apartment on one occasion after the incident for which he was charged and why she did not cal the police:

> DEFENSE COUNSEL:  After he left, you didn't call the police?
>
> A.B.:  He didn't.  He wouldn't leave.  He would never leave.
>
> DEFENSE COUNSEL:  So he's still in the apartment right now?
>
> A.B.:  No, because I'm not there, and obviously he's in jail.

Darrell did not object to A.B.'s answers, move to strike them, or request a curative instruction.  At the close of A.B.'s testimony, Darrell moved for a mistrial "based on the fact that counsel's witness alerted to the fact that Mr. Darrell is in custody."  The district court denied the motion.

"[A] mistrial should not be granted unless there is a reasonable probability that the outcome of the trial would be different."  *State v. Spann*, 574 N.W.2d 47, 53 (Minn. 1998) (citation omitted).  A district court judge is in the best position to gauge whether inadmissible evidence creates sufficient prejudice to warrant a mistrial.  *State v. Graham*, 371 N.W.2d 204, 207 (Minn. 1985).  We apply an abuse-of-discretion standard of review to a district court's denial of a motion for a mistrial.  *State v. Manthey*, 711 N.W.2d 498, 506 (Minn. 2006).

A reference to a defendant's prior incarceration may be unfairly prejudicial and, thus, inadmissible.  *See id.*; *State v. Hjerstrom*, 287 N.W.2d 625, 627-28 (Minn. 1979).

8

But the admission of such evidence is not reversible error if the state did not intentionally elicit the testimony, the statement was merely a "passing" reference, and the evidence supporting guilt was "overwhelming." *State v. Haglund*, 267 N.W.2d 503, 505 (Minn. 1978). In *Manthey*, the supreme court considered a situation in which the jury learned that a defendant was in jail during trial for the charged offense. 711 N.W.2d at 506-07. The supreme court reasoned that a reference to detention during trial is not as damaging as a reference to a prior incarceration that is unrelated to the trial. "Generally, jurors' knowledge that a defendant is in custody pending the outcome of a . . . trial is likely to have been seen for just what it is – standard law enforcement practice." *Id.* (quotation omitted).

In this case, the denial of Darrell's motion for a mistrial was not an abuse of discretion for the same reasons that were present in *Haglund*: the state did not intentionally elicit the testimony, the statement was merely a "passing" reference, and the evidence supporting guilt was "overwhelming." *See* 267 N.W.2d at 505. In fact, the state did not elicit the objectionable testimony at all; the statement at issue was elicited by Darrell's own counsel, with a question that appears to have no meaningful purpose. It should not be surprising that A.B. answered the question as she did.

Darrell also contends that the district court erred by not giving the jury a curative instruction after A.B.'s testimony. Because Darrell did not request a curative instruction, we review only for plain error. *See* Minn. R. Crim. P. 31.02; *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). Although a curative instruction may be helpful to mitigate any prejudice, the caselaw does not require one in this situation. *See Manthey*,

711 N.W.2d at 506. Moreover, a *sua sponte* curative instruction may have done more harm than good by drawing the jury's attention to Darrell's custody status. *See State v. Porter*, 526 N.W.2d 359, 365-66 (Minn. 1995).

In short, any prejudice arising from A.B.'s comment about Darrell's detention during trial did not rise to a level that requires a mistrial. Thus, the district court did not err by denying Darrell's motion for a mistrial and did not plainly err by not giving a curative instruction.

### III. *Pro Se* Supplemental Brief

Darrell filed a *pro se* supplemental brief in which he challenges the state's evidence and provides his own version of the incident that led to his conviction. For example, Darrell argues that A.B. had threatened him in the past, that A.B. first threatened him with the knife, and that A.B.'s wounds were inflicted in a previous incident. The state responds by arguing that Darrell's argument is improper because it is not based on facts in the evidentiary record. The state is correct on this point. "The record on appeal consists of the papers filed in the district court, the offered exhibits, and the transcript of the proceedings, if any." Minn. R. Crim. P. 28.02, subd. 8; *State v. Meldrum*, 724 N.W.2d 15, 22 (Minn. App. 2006). Darrell's appellate arguments must be based on the evidence introduced at trial; he may not introduce new facts on appeal. We have thoroughly considered the entirety of Darrell's *pro se* supplemental brief, and we conclude that it does not warrant the reversal of his convictions.

**Affirmed.**

10