*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1735**

State of Minnesota,
Respondent,

vs.

James Michael Chermack,
Appellant.

**Filed December 12, 2016
Affirmed
Jesson, Judge**

Wright County District Court
File No. 86-CR-14-3145

Lori Swanson, Attorney General, Karen B. McGillic, Assistant Attorney General, St. Paul, Minnesota; and

Tom Kelly, Wright County Attorney, Buffalo, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and Jesson, Judge.

## UNPUBLISHED OPINION

**JESSON**, Judge

On appeal from his conviction of second-degree criminal sexual conduct, appellant James Michael Chermack argues that the district court committed reversible

error by allowing the state to present evidence that he sexually touched his step-granddaughter as relationship evidence under Minnesota Statutes section 634.20 (2012) when the step-granddaughter was not a family or household member. He also argues that the probative value of the evidence was substantially outweighed by its potential for unfair prejudice. Because the step-granddaughter, who resided with Chermack in the past, qualifies as a family or household member under the statute, and because the probative value of the relationship evidence was not outweighed by its prejudicial effect, the district court properly exercised its discretion by admitting the evidence. We affirm.

**FACTS**

According to trial testimony, in 2010, Chermack met his future wife, and they moved in together. Near the end of 2011, T.B., his wife's adult son, lived in Chermack's home for about five months, along with two children. T.B. has two biological children who are half siblings: a son, T.J.B., born in October 2007; and a daughter, F.E.J.B., born in June 2004.[1]

After this period of residency, T.J.B. and F.E.J.B. would still frequently visit the home, including overnights. For a period of time, they visited nearly every other weekend, sometimes without their parents. T.J.B. would also visit "a lot of times during the week," and F.E.J.B. would visit at least once a week in the summer. During these visits, Chermack would sometimes be alone with the children while his wife was at work or in another part of the house. On overnight visits, T.J.B. and F.E.J.B. would stay

---

[1] T.B. later married his current wife, who has four children.

2

together in a room with a queen-sized bed and a television, and Chermack would come in and watch movies with them.

In 2014, when T.J.B. saw his maternal grandmother, he told her that he wished to tell her "a secret," but that he was worried because his other grandmother would then "kick [Chermack] out." Eventually, he disclosed that Chermack had touched his penis and also stated that Chermack has touched F.E.J.B. on her buttocks. Later, when his mother learned of the allegations, he told her that the touching had occurred at Chermack's house when they were watching a movie in bed. The allegations were reported to police. T.B. also reported T.J.B.'s story to F.E.J.B.'s mother, and F.E.J.B. then told her mother that Chermack had put his hands down her pants. She also said that Chermack would touch T.J.B. and make T.J.B. touch his penis.

Chermack was charged with three counts of second-degree criminal sexual conduct committed against T.J.B. Before trial, the state moved to admit evidence of F.E.J.B.'s abuse as relationship evidence under Minnesota Statutes section 634.20. The prosecutor argued that the statute allowed evidence of acts against other family or household members. Defense counsel opposed the motion, arguing that the statute was designed to illuminate the history of a relationship between the defendant and a victim of domestic abuse, rather than conduct against a third party. The district court granted the motion, finding that the statutory requirements were met because F.E.J.B. was a family or household member based on her relationship to the victim and to Chermack.

At trial T.J.B., who was then seven years old, indicated, using an anatomical picture, that Chermack touched his penis. He stated that this happened in bed when he

3

was trying to fall asleep while he was wearing pajamas. He testified that it had happened more than once, but he could not remember how many times. He stated that he had told his mother, grandmother, and F.E.J.B. about it, but he could not remember specifically what he told F.E.J.B.

F.E.J.B., who was then ten years old, also testified. Before she testified, the district court gave a *Spreigl*-type cautionary instruction that her evidence was to be used for the limited purpose of assisting the jury to determine whether the defendant committed the charged offenses, not his character or whether he acted in conformity with that character. F.E.J.B. testified that T.J.B. told her that Chermack had placed his hands down T.J.B.'s pants. She also testified that Chermack placed his hands on her in her private area about three times, when they were on a couch, and that she told T.J.B. that Chermack had done the same thing to her as he did to T.J.B.

Video-recorded CornerHouse interviews of both children were played for the jury.[2] During T.J.B.'s interview, which was recorded when he was six years old, he at first denied the allegations, but then stated that Chermack "stays in [his] bed" and "touches [his penis]." He indicated that this had happened more than once, through his pants and underwear, when he was in F.E.J.B.'s bed and watching movies. He also stated that Chermack had put his hand on the skin of Chermack's private parts. According to T.J.B., these events had happened when he was from four to six years old. He also

---

[2] CornerHouse is a child-abuse training and evaluation center whose stated mission includes assessing suspected child sexual abuse and coordinating forensic interview services.

indicated that F.E.J.B. had told him that Chermack also touched her when he sat by her in the living room.

In F.E.J.B.'s CornerHouse interview, which was conducted when she was nine years old, she indicated that T.J.B. told her that Chermack lay in bed with T.J.B. and "start[ed] feeling things," touching T.J.B.'s penis. T.J.B. also told her that Chermack asked him "to do the same thing back." She did not witness this because she was sleeping and was "a hard sleeper." She also said that when she was five, Chermack had rubbed her vagina once underneath her clothes when they were on a couch together. She at first stated that he had touched her only once, but then indicated that this had happened on two other occasions over her clothes.

Chermack testified that all of T.B.'s children, including those of T.B.'s current wife, came to visit the home. He testified that he had never touched T.J.B. or had T.J.B. touch him and that he never touched F.E.J.B. He testified that once in a while, when T.J.B. got scared, he would come and crawl into his wife's side of the bed, and that once Chermack watched a movie with only T.J.B. and F.E.J.B. when his wife was watching a movie inappropriate for children. He remembered that this occurred near the end of February 2013.

At closing argument, the state referred to F.E.J.B.'s testimony that she had been touched and urged the jury to consider her testimony as corroborating T.J.B.'s testimony that he had been touched. The prosecutor argued that it could not be an accident because it happened multiple times and because F.E.J.B. "indicated it happened to her as well."

5

The jury convicted Chermack of two counts of second-degree criminal sexual conduct and acquitted him of a third count relating to multiple acts over an extended period of time. Because both counts arose from the same behavioral incident, the district court only adjudicated one count and sentenced Chermack to 36 months, with a stay of execution and probation for 25 years. This appeal follows.

## D E C I S I O N

Chermack challenges the district court's admission of F.E.J.B.'s testimony as relationship evidence under Minnesota Statutes section 634.20. Under that statute, the district court may admit "[e]vidence of similar conduct by the accused against the victim of similar conduct, or against other family or household members," provided that certain conditions are met. Minn. Stat. § 634.20.[3] Relationship evidence is considered relevant because it assists in illuminating the history of the relationship between the defendant and the victim, and it may also help to prove motive or help the jury to assess witness credibility. *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010) (quotation omitted).[4] Thus, such evidence is admissible if its probative value is not substantially outweighed by

---

[3] In 2013, the Minnesota legislature changed the language of section 634.20 to refer to "domestic conduct," rather than "similar conduct." 2013 Minn. Laws ch. 47, § 7. This change applied to crimes committed on or after August 1, 2013. *Id.* Based on T.J.B.'s allegations of the date of the sexual contact, the district court applied the 2012 version of the statute, and we refer to that version here.

[4] Relationship evidence is considered differently from evidence of other crimes or bad acts, which is addressed under Minnesota Rule of Evidence 404(b). Other-crimes evidence is not admissible to prove that a defendant acted in conformity with his character, but may be admissible for other purposes, such as to prove motive, intent, plan, knowledge, identity, or absence of mistake or accident. Minn. R. Evid. 404(b); *State v. Spreigl*, 272 Minn. 488, 490, 139 N.W.2d 167, 169 (1965). Section 634.20 "allows much more latitude" than the exceptions to rule 404(b). *State v. Word*, 755 N.W.2d 776, 784 (Minn. App. 2008).

the danger of unfair prejudice against the defendant, confusing the issue, misleading the jury, undue delay, or the unnecessary presentation of cumulative evidence. Minn. Stat. § 634.20.

Evidentiary rulings generally rest within the district court's discretion, and this court will not reverse a district court's decision on the admission of evidence absent an abuse of that discretion. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). This rule applies to the admission of relationship evidence. *Matthews*, 779 N.W.2d at 553. If the district court erroneously admits evidence, an appellate court will nonetheless affirm unless the appellant establishes prejudice from the abuse of discretion, which occurs if there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict. *State v. O'Meara*, 755 N.W.2d 29, 35 (Minn. App. 2008).[5] This court, however, reviews matters of statutory construction de novo. *State v. Barnslater*, 786 N.W.2d 646, 650 (Minn. App. 2010), *review denied* (Minn. Oct. 27, 2010).

---

[5] We note the state's argument that the plain-error standard for unobjected-to error applies in this case because the defense did not object to the evidence in the district court on the ground now advanced on appeal. If a party fails to object to an error before the district court, in order to obtain reversal, that party must establish (1) an error; (2) that is plain; and (3) that affects a defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). We recognize that this standard applies if a party has shifted theories on appeal. *See State v. Bailey*, 732 N.W.2d 612, 623 (Minn. 2007) (stating that a party may not "obtain review by raising the same general issue litigated below but under a different theory") (quotation omitted)). But here, the defense argued to the district court the same general theory presented on appeal: that the proposed evidence did not fall within the statutory requirements for relationship evidence under Minnesota Statutes section 634.20.

## A. F.E.J.B. qualifies as a family or household member under Minnesota Statutes section 634.20.

Chermack argues that the district court erred by admitting evidence of F.E.J.B.'s abuse as relationship evidence because she does not qualify as his "family or household member" as specified by statute for the admission of relationship evidence. Minn. Stat. § 634.20. For the purpose of admitting relationship evidence, section 634.20 defines "[f]amily or household members" as

> (1) spouses and former spouses;
> (2) parents and children;
> (3) persons related by blood;
> (4) persons who are presently residing together or who have resided together in the past;
> (5) persons who have a child in common regardless of whether they have been married or have lived together at any time;
> (6) a man and woman if the woman is pregnant and the man is alleged to be the father, regardless of whether they have been married or have lived together at any time; and
> (7) persons involved in a significant romantic or sexual relationship.

Minn. Stat. § 634.20; Minn. Stat. § 518B.01(b) (2012). Chermack argues that because the relationship between him and F.E.J.B., who is his step-grandchild, is not listed in the statute, evidence of prior abuse of F.E.J.B. was inadmissible to assist in proving abuse of T.J.B. *See* Minn. Stat. § 518B.01(b).

However, another category of relationships listed in the statute is "persons who have resided together in the past." Minn. Stat. § 518B.01. At trial, Chermack testified that T.B. and his then-wife lived in Chermack's home for five months in 2011.[6] His attorney then asked, "How about any children?", and Chermack replied, "Two."

---

[6] T.B.'s former wife also testified that she lived in the home for about five months, but recalled the year as 2010 rather than 2011.

Although T.B. later married a woman with four children, who also spent time at Chermack's home, there is no indication in the record that the "two children" who lived there for a five-month period with T.B. were other than F.E.J.B. and T.J.B. Because the record establishes that Chermack and F.E.J.B. "have resided together in the past," the district court did not err by concluding that evidence of F.E.J.B.'s prior abuse fell within the category of relationship evidence with respect to Chermack's abuse of T.J.B. *See id.*

Chermack points out that the district court also found that F.E.J.B.'s status as "the sister of the victim" justified admitting the evidence as relationship evidence. To this extent, the district court's analysis is incorrect. It is not the relationship between the victim and the other family member that is relevant in deciding whether to admit relationship evidence. Rather, it is the relationship between the other family member and the defendant. *State v. Valentine*, 787 N.W.2d 630, 637-38 (Minn. App. 2010), *review denied* (Minn. Nov. 16, 2010). But we conclude that the district court's mistaken analysis of addressing the relationship between T.J.B. and F.E.J.B., rather than the one between Chermack and F.E.J.B., is harmless in view of its other legally sufficient ground for admitting the relationship evidence.

## B. The probative value of the evidence was not outweighed by unfair prejudice.

Chermack argues that even if evidence concerning F.E.J.B.'s abuse falls within the category of relationship evidence, it was improperly admitted because its probative value was outweighed by its prejudicial effect. In determining whether the probative value of evidence is outweighed by its prejudicial effect, the concept of unfair prejudice does not refer to merely damaging evidence or even severely damaging evidence. *State v. Meyer*,

749 N.W.2d 844, 849 (Minn. App. 2008). Rather, unfairly prejudicial evidence gives one party an unfair advantage because it persuades by illegitimate means. *Id*.

Chermack argues that the evidence of sexual touching against F.E.J.B. in 2008 was unfairly prejudicial because it did not involve the victim in this case, T.J.B. But the probative value of evidence is bolstered if the evidence helps establish the relationship between the victim and the defendant or places the event in context. *State v. McCoy*, 682 N.W.2d 153, 159 (Minn. 2004). Here, evidence of F.E.J.B.'s abuse had probative value because she visited Chermack at the same time as T.J.B. and because her testimony of her own abuse was similar to that of T.J.B.'s. Therefore, it helps to place the allegations of T.J.B.'s abuse in context. *See id*. In addition, because the abuse against F.E.J.B. was not more serious than that committed against T.J.B., the jury was less likely to improperly convict Chermack based on evidence of his conduct toward F.E.J.B.

Chermack also argues that the state did not have a need for the evidence. The state's need for relationship evidence "is naturally considered as part of the assessment of [its] probative value versus [its] prejudicial effect." *Meyer*, 749 N.W.2d at 849. Chermack points out that T.J.B. did not recant, he reported the abuse to several people, he testified at trial, and other witnesses supported his allegations. But the abuse occurred in private, in Chermack's home; T.J.B. was only seven years old at the time of trial; and he was initially reluctant to tell the CornerHouse interviewer about the abuse. Chermack also testified and denied abusing T.J.B. Therefore, the relationship evidence of conduct against F.E.J.B. assisted the jury in weighing the credibility of T.J.B.'s allegations.

We also note that any prejudicial effect of the relationship evidence was lessened because the district court gave two cautionary instructions to the jury. Those instructions informed the jury that the evidence was being submitted for the limited purpose of assisting in determining whether Chermack committed the charged offense, it was not to be used to prove his character or that he acted in conformity with that character, the jury was not to convict Chermack of any other offense, and it was not to convict him on the basis of any occurrence against F.E.J.B.[7] *See State v. Lindsey*, 755 N.W.2d 752, 757 (Minn. App. 2008) (stating that cautionary instructions lessened the probability that the jury would give undue weight to relationship evidence), *review denied* (Minn. Oct. 29, 2008); *see also State v. Ferguson*, 581 N.W.2d 824, 833 (Minn. 1998) (stating that this court assumes that a jury follows the district court's instructions). Although the prosecutor at closing argument argued that F.E.J.B.'s testimony corroborated T.J.B.'s testimony, he also reminded the jury of the court's instruction not to convict Chermack based on the abuse of F.E.J.B. Finally, the jury found Chermack not guilty of an additional count of criminal sexual conduct against T.J.B., which tends to show that the jury was not prejudicially influenced by the relationship evidence. *See State v. DeWald*, 463 N.W.2d 741, 745 (Minn. 1990) (stating that acquittal of some charges demonstrates that the jury conscientiously considered the evidence rather than resorting to passion or prejudice).

---

[7] These instructions follow the pattern jury instructions for *Spreigl* evidence, rather than those for relationship evidence. *See* 10 *Minnesota Practice*, CRIMJIG 2.01, .07, 3.16 (2015). But the general instruction under CRIMJIG 2.01 has been approved by this court for relationship evidence. *See State v. Sanders*, 743 N.W.2d 616, 621 (Minn. App. 2008), *aff'd*, 775 N.W.2d 883 (Minn. 2009).

The district court has broad discretion in weighing the probative value of evidence against its prejudicial effect. *State v. Gassler*, 505 N.W.2d 62, 70 (Minn. 1993) (applying Minn. R. Evid. 403); *McCoy*, 682 N.W.2d at 159 (recognizing that balancing test for relationship evidence mirrors that provided in Minn. R. Evid. 403). We conclude that, on this record, the probative value of the relationship evidence was not outweighed by its prejudicial effect, and the district court did not abuse its discretion by admitting it.

**Affirmed.**